Blake v. City of Pontiac.

## Blake v. City of Pontiac and Augustus E. Robinson.

1. *Cities and Villages—Liability for Lack of Accommodations, etc., in City Prison.*—The fact that tramps and vagrants were kept in the calaboose in company with the plaintiff, and that he was not kept in more select society while confined therein for the violation of an ordinance, and the further fact that he was offended by their rough and vile conversations, and became nauseated and sick, can not be charged against the city as an original complaint in constructing a prison.

2. *Cities and Villages—Calaboose Regulations.*—The building of the calaboose, and the establishing of regulations for the detention of prisoners therein, to answer to charges of violating the ordinances of the city, are clearly within the police power of municipal corporations and are not in their nature corporate acts.

3. *Cities and Villages—Enforcement of Ordinances.*—The making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public, is within the power of a municipal corporation, and all persons officially charged with the execution and enforcement of such ordinances and regulations are *quo ad hoc* police officers.

4. *Cities and Villages—Arrest of Offenders.*—The arrest of a person on a charge of violation of an ordinance of a municipal corporation, and detaining him in the calaboose, is an act which such corporation is incapable of doing, except through its constituted officer—the city marshal—or some other person duly qualified by law to act. The municipal corporation can act in no other way except through its officers.

5. *Cities and Villages—Power to Commit Wrongs.*—A city, in the performance of its police regulations, can not commit a wrong through its officers in such a way as to render it liable for the torts of its officers.

6. *Cities and Villages—Power over Officers—Ratification.*—A city has no power to authorize a police officer to commit an unlawful act, and what it can not do directly, it can not do indirectly by ratification.

7. *Cities and Villages—Liability for Unauthorized Acts of Officers.*—The fact that the officers of a municipal corporation adopt ordinances and appoint a marshal to see that they are executed, does not render the municipal corporation liable for the unauthorized illegal and oppressive acts of the marshal as representative of the municipality. The officers of the municipality only empower the marshal to do that which the ordinances require, and not to oppress its citizens.

8. *Cities and Villages—Building of the City Prison.*—The building of the city prison is a lawful act, and its construction does not render the municipality liable for the wrongful imprisonment of persons therein, when they have done no act contributing to it.

9. *Cities and Villages—Duty in Regard to Calaboose.*—The statute neither requires nor allows a city or other municipal corporation to erect and maintain, as a city prison, an illegal structure, nor does it allow it to incarcerate prisoners therein; therefore such an illegal incarceration should not be regarded as an act of the municipality, as it has no power to do a wrong.

10. *Cities and Villages—Liability for an Act of its Officers.*—In an action brought against a city and the city marshal for arresting a person and confining him in a calaboose, where a city is simply exercising its police powers, any act of its officers or agents, including the directors or aldermen, in violation of and against the terms and spirit of the law, where acting as a legislative body or as mere agents and officers executing the ordinances, are *ultra vires* and in excess of the power of the city, and for such acts of such officers whereby damages accrue to any citizen there is no remedy against the corporation.

11. *Joint Actions—Municipalities and Municipal Officers.*—Where an action for a tort was brought against the several defendants, and in legal contemplation the act complained of could not have been committed by several persons and could only be considered the tort of the actual misdoer or the distinct tort of each, a separate action against the actual misdoers only, or against each, must be brought. So *held*, where an action was brought against a city and the city marshal jointly for arresting and confining the plaintiff in the calaboose.

**Memorandum.**—Action of trespass and case. Appeal from the Circuit Court of Livingston County; the Hon. Alfred Sample, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893.

### Statement of the Facts.

This was an action originally instituted in trespass, against the City of Pontiac, and its marshal, Augustus E. Robinson, claiming damages for an alleged arrest and subse-

quent detention in the calaboose of the city. Appellant, on April 23, 1892, filed his declaration, containing two counts in trespass, and on May 9th, by leave of court, he filed an additional count in case. The cause was continued until the October term, 1892, of the court, when the defendants interposed a general and special demurrer to the declaration and each and every count thereof. On November 29th, the demurrer was sustained, and plaintiff took leave to amend each count of the declaration, but subsequently withdrew his motion for leave to amend his declaration, and elected to stand by the same. Judgment *nil capiat per breve* was rendered for the defendants on the demurrer and the plaintiff appeals.

APPELLANT'S BRIEF, C. C. STRAWN, A. C. NORTON AND
W. T. AMENT, ATTORNEYS.

The question presented by this record is, whether a city, as a municipal corporation, is liable under the laws of this State for its own wrongful acts—wrongful acts that it has itself done—as distinguished from the wrongful and unauthorized acts of its mere ministerial officers and agents. And upon the proposition that such a corporation is liable in damages for its own wrongful acts, the same as other natural and artificial persons, there can not be the slightest doubt upon either principle or authority. To hold otherwise, would invest such corporations with all the sovereignty of government, and leave the citizen without recourse against the persecutions of the oftimes ignorant and malicious administrators of a petty local jurisdiction. Dillon's Municipal Corporations, Sec. 972; Thayer v. Boston, 19 Pick. (Mass.) 511; Lee v. Sandy Hill, 40 N. Y. 442; Buffalo Turnpike Co. v. Buffalo, 58 N. Y. 639; Perley v. Georgetown, 7 Gray (Mass.) 464; Moore v. Railroad Co., 4 Gray (Mass.) 465; Howell v. Buffalo, 15 N. Y. 512; Angell & Ames on Corp., Sec. 311.

APPELLEES' BRIEF, R. S. McILDUFF AND J. A. BROWN,
ATTORNEYS.

A municipal corporation can not be held for the torts of

its officers and agents, committed in the performance of acts which were wholly beyond the authority or power of the corporation. Neither is it liable for the illegal or unauthorized acts of its officers, though done *colore officii*, unless it previously authorized or subsequently ratified them. Mecham on Public Officers, § 850, 851, 852; 2 Dillon on Municipal Corporations, § 950; Clodfelter v. State, 86 N. C. 51; 41 Am. Rep. 440; Lewis v. State, 96 N. Y. 71; 48 Am. Rep. 607; Rivers v. City of Augusta, 65 Ga. 376; 38 Am. Rep. 787; Davis v. Montgomery, 51 Ala. 139; 23 Am. Rep. 545; Forsythe v. Atlanta, 45 Ga. 152; 12 Am. Rep. 576; Reock v. Newark, 33 N. J. Law, 129; Smith v. Philadelphia, 81 Pa. St. 38; 22 Am. Rep. 731; White v. Charleston, 2 Hill, So. Car. 571; Hill v. Boston, 122 Mass. 344; 23 Am. Rep. 332; Perley v. Georgetown, 7 Gray, 464; Richmond v. Long's Admr's, 17 Gratt. 375; 94 Am. Dec. 461; Maximilian v. Mayor, etc., of New York, 62 N. Y. 160; 20 Am. Rep. 468; Buttrick v. City of Lowell, 1 Allen, 172; 79 Am. Dec. 721; Hafford v. City of Bedford, 16 Gray, 287; Wheeler v. Cincinnati, 19 O. St. 19; 2 Am. Rep. 368; Dargan v. Mayor, etc., City of Mobile, 31 Ala. 469; 70 Am. Dec. 505; Stewart v. City of New Orleans, 9 La. Ann. 461; Campbell's Admx. v. City Council of Montgomery, 53 Ala. 537; 25 Am. Rep. 656; Grumbine v. The Mayor, etc., of Washington, 2 McArthur, 578; 29 Am. Rep. 626; Brown v. Vinalhaven, 65 Me. 402; 20 Am. Rep. 709; Ogg v. Lansing, 35 Ia. 495; 14 Am. Rep. 499; Calwell v. City of Boone, 51 Ia. 687; 33 Am. Rep. 154; Hurlburt v. Litchfield, 1 Root 520; Elliott v. Philadelphia, 75 Pa. St. 347; 15 Am. Rep. 591; Welsh v. Village of Rutland, 56 Vt. 228; 48 Am. Rep. 762; Hayes v. City of Oshkosh, 33 Wis. 314; 14 Am. Rep. 760; Murtaugh v. St. Louis, 44 Mo. 479; Heller v. Sedalia, 53 Mo. 159; 14 Am. Rep. 444; Rowland v. City of Gallatin, 75 Mo. 134; 42 Am. Rep. 395; Prather v. City of Lexington, 13 B. Monroe 559; 56 Am. Dec. 585; Pollock's Admr. v. Louisville, 13 Bush 221; 26 Am. Rep. 260; Chicago v. Turner, 80 Ill. 422; Wilcox v. Chicago, 207 Ill. 334.

Opinion of the Court, Lacey, J.

This was an action in trespass and case, commenced by appellant against appellees, to recover damages occasioned by certain alleged wrongful and illegal acts done by appellee, whereby appellant was claimed to have received damages, and for which it is insisted the appellees were jointly and severally liable. The declaration consists of three counts to which appellees, joining severally, demurred. The court sustained it to each count, and the appellant abiding his declaration, judgment was rendered against him for costs, from which judgment this appeal is taken.

The declaration as finally amended consists of three counts—1, 2 and 3, and are in substance as follows, to wit: The first count avers in substance, that the city of Pontiac and defendant, Robinson, having arrested appellant in said city on a charge of being drunk and disorderly, in violation of the ordinances of the city, with force, and unlawfully detained him for a given period in a calaboose provided by the city for the detention of persons charged with and convicted for offenses against the ordinances of the city, in which calaboose there were, and for a long time had been, prior to the time of arrest, a large quantity of human excrement, and a large number of human lice and vermin, and foul and noisome, unwholesome, pestilential and poisonous stenches, etc., rendering the same dangerous to human habitation; that the floor was constructed of common, rough building brick laid upon the earth, and was then, and had been for a long time, cold and damp and unfit for human beings to lie upon; that it was not provided with any bedding, chairs or furniture of any kind for the use, convenience or comfort of plaintiff, and other persons detained therein; that it was not provided with any privy vault or place or means of answering the calls of nature, etc., whereby appellant, while detained therein, was subjected to the humiliation and indecency of answering the calls of nature upon the floor of the calaboose in presence of both male and female prisoners therein; that during his imprisonment he was not

offered food or refreshments by the appellees or either of them; that for ten years prior to the detention of the appellant in said calaboose it had been occupied by "tramps" and other filthy persons, filled with vermin, etc., and unfit for occupation; that during the time of his confinement in prison he was compelled to associate with filthy persons, covered with vermin, who insulted and abused him by vile opprobrious language and threatened to take his clothing, etc., whereby he was sickened and injured in health and was exposed to public disgrace and humiliation of body and mind, and injured in credit and circumstances, and was thereafter for a long time rendered incapable of transacting his affairs and business, etc.

Second count. That defendants assaulted appellant, dragged him around, and struck him, etc., tripped him, and caused him to fall heavily on the sidewalk, greatly injuring him, and forced him in the calaboose, and there imprisoned him, without reasonable and probable cause, for five hours, and took him forcibly before a police magistrate of the city and then before a justice of the peace, and then again to the calaboose and there detained him in prison, without any probable cause, for thirty-five hours, contrary to law and against his will, and greatly hurt and bruised him and disgraced him and injured his credit.

The third count is much the same as the first, except it charges that the city was organized under the act authorizing the incorporation of cities and villages, approved April 10, 1872, and acts amendatory thereof, and as such corporation kept and owned the calaboose in question and maintained it for the detention of persons charged with violating the city ordinances; that appellant was arrested by Robinson, one of the appellees, who was marshal of the city, in his capacity as such, on a charge of violating the ordinances, and by him appellant was confined for forty hours in such calaboose. Then follows the same charge against the city for not keeping its calaboose in good condition—charges Robinson as one of the city's agents and officers, etc., and the city as principal, with keeping the calaboose in a filthy

and unwholesome condition in manner as charged in the first count. The first and third counts of declaration charge that the floor of the calaboose was cold and damp and unfit for human beings to "lie and rest upon," but no charge is made in either count that appellant laid or rested on it.

The first count charges that the calaboose was not provided with bedding, chairs or furniture for the convenience of appellant; that it had no privy vault. But there is no charge, except inferentially, that appellant remained in the calaboose over night, or that he was not supplied with a bed, or that he suffered for the want of furniture.

The remaining points of complaint, for which damages are sought, and for which alone there appears to be any charge for damages, or any proper foundation laid for a claim of damages, is the filthy and untidy condition of the calaboose, arising from the neglect of the calaboose keeper in not keeping it clean. The fact that tramps and vagrants were kept in the calaboose in company with the appellant, and that he was not kept in more select society while in the calaboose, and that he was offended by their rough and vile conversation, and thereby became nauseated and sick, could scarcely be charged up against the city as a ground of original complaint in building the calaboose. In providing such a structure for the detention of persons, it might reasonably be anticipated that only the rough and criminal element of society, "tramps," and offenders against its peace and good order, would likely be detained therein, and considering how seldom it would be necessary to accommodate and entertain a real gentleman, it would seem an entirely unnecessary outlay of money to erect such a building provided with separate parlors for the especial accommodation of that class of offenders. So nothing could reasonably be charged against Pontiac for failing to do that.

The first and third count of the declaration charges that the appellant "during his imprisonment in the calaboose was not offered any food or refreshment by the defendants or either of them." It will be seen that there is no averment that appellant suffered for want of food and refresh-

ments, or that he did not furnish them for himself, or that he was willing to accept calaboose fare or wanted it, or specified what kind of refreshments he wanted, if any.

This suit is brought to recover against the appellees jointly for failure to keep the city calaboose in a proper condition, and for wrongfully arresting the appellant, and incarcerating him in the city prison. The charges in the declaration are of a nature such as municipal corporations are not liable for as acts done in their private or corporate character. The acts in question are such only as the city was empowered to perform in its public capacity. The acts complained of were performed plainly in the exercise of the police power. The building of a city calaboose and the regulations for the detention of prisoners to answer charges against the ordinances of the city are clearly within its police powers, and are not in their nature corporate acts. In Culver v. The City of Streator, 130 Ill. 238, this power is described "As comprehending the making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public, and all persons officially charged with the execution and enforcement of such police ordinances and regulations are *quo ad hoc* police officers."

The declaration in question seeks to avoid "conclusions to be drawn from the character of the duties which" Robinson was employed to perform, at the time of the arrest, the same as was done in Culver v. City of Streator, *supra*.

The first count charges that the city of Pontiac and Robinson arrested appellant on a charge of violating the ordinances and detained him in the city calaboose. This was an act the city was incapable of doing except through its constituted officer, the city marshal, or some other person duly qualified by law to act. Though the manner in which the city could or did act in the matter is not stated, the court will take notice that it could act in no other way except through its officers.

In the second count the city, jointly with Robinson, is charged with making an assault on the appellant and forc-

ing him into the calaboose. This, again, the city is not capable of doing except through its officers, and this must be regarded as a charge only against Robinson as marshal.

In the third count the city is charged, after the arrest of appellant by the city marshal, appellee Robinson, on a charge of violating the city ordinances, of (jointly with Robinson, whom it denominates as the city's servant or agent,) incarcerating him in the calaboose in manner complained of. This can mean nothing more nor less than that Robinson was the city marshal, and in that capacity was the servant and agent of the city. In fact he was not the servant and agent of the city in the sense intended in the declaration. He was simply a public officer acting under city ordinances and the statute. If there were any possible way in which the city could commit the joint acts of trespass it should be shown by the declaration.

It appears to be well established by law that a city, in the performance of its police regulations, can not commit a wrong through its officers in such a way as to render it liable for his torts. Many cases go to this extent, and none that we are aware of hold differently. The case of Caldwell v. City of Boone, 51 Ia. 687, 33 American Rpt. 154, was an action to recover for an assault and battery and false imprisonment of the defendant by deputy marshal, in arresting and hand-cuffing and imprisoning the plaintiff under pretense of enforcing an ordinance of the city providing for the punishment of persons being drunk and upon the streets, and on appeal, the Supreme Court held the defendant, the city, not liable, and in deciding, said: "It is contended, however, that if the city be not liable in the first instance for the illegal acts of its officers in enforcing a police regulation, it may become liable by ratification. But a city has no power to authorize a police officer to commit an unlawful act, and what it can not do directly it can not do indirectly by ratification. The same consideration disposes of the allegation that the deputy marshal was an unfit person for the office."

The same rule was held in Hurlburt v. Litchfield, 1 Root, 520, where it was held that constables, though appointed by

the town, are not its agents or servants, and the town was not liable for their default, the statute not having so provided. The principle here announced is not a new one in this State. The question has been before the Supreme Court in several instances, the first being The Town of Odell v. Schroeder and Wife, 58 Ill. 353, which case on its facts is similar in its main features to the one at bar, for the appellees in that case sought to recover for the illegal arrest of Mrs. Schroeder, and her subsequent imprisonment, by the constable, in the calaboose of the town, which was claimed to have been improperly kept, which fact was insisted upon to aggravate damages. The court held very pointedly, "that the fact that the trustees adopted the ordinances and appointed the town constable to see that they were executed did not render the town liable for the unauthorized, illegal and oppressive acts of the officer. They, as representatives of the town, only empowered him to do what the ordinances required, and not to oppress citizens of the place." Where they exceed their duties, the appointing power is not responsible for the wrong.

On the question of the improper construction of the calaboose, the court say: "The building of the prison was a lawful act and its construction did not render the town liable for the wrongful imprisonment of persons therein when they have done no act contributing to it." While the court holds that the town would not be liable for any injury arising from the improper construction of the prison, it intimates, although it does not decide, that the trustees of the town might be liable individually on account of such wrongful construction. The town itself, however, it says, "would not be liable for creating a noisome, unhealthy and uncomfortable prison and requiring persons by ordinance to be incarcerated in it." The substance of the opinion is, that the erecting and maintaining such a prison and requiring by ordinance prisoners to be kept in it, could not be regarded as a corporate act. The statute neither requires nor allows a city or other municipal corporation to erect and maintain such an illegal structure; nor does it allow it to incarcerate

prisoners therein. Therefore, it should not be regarded as the act of the corporation, as it has no power to commit a wrong. The people and tax payers are not responsible for such illegal acts, nor, it says, would "any information the trustees may have had in reference to such illegal imprisonment, even had they participated in it, render the corporation liable any more than the knowledge of any other citizen would." The same doctrine was held in Chicago v. Turner, 80 Ill. 422; also in Wilcox v. Chicago, 107 Ill. 334. In the latter case the Supreme Court held that the general rule of *respondeat superior* has no application in this State to the case of the injury of a person by and through the neglect of a member of a fire department of a city while in discharge of his duty, and the exemption is put upon the ground of public policy. See also, Arms, Adm'r, v. The City of Knoxville, 32 Ill. App. 605; Culver v. City of Streator, 34 Ill. App. 77; same case on appeal, 130 Ill. 243.

It was held by the Supreme Court of the State of Maine in Brown v. Vinalhaven, 65 Maine, 402, that the defendant town was not liable for suffering a nurse employed in the small-pox hospital established by the town, to depart without being properly disinfected, whereby plaintiff caught the disease; a much more serious matter than the contraction by the appellant of *plica polonica* from the unkempt heads and unwashed bodies of the traveling men, popularly called "tramps," confined in the Pontiac calaboose, as complained of in the declaration.

It appears, then, from a review of all the authorities, that in this case, where the municipal body is simply exercising its police powers, any acts of its officers or agents, including the board of trustees or aldermen, in violation and against the terms and spirit of the statute when acting as a legislative body or as mere agents and officers executing the ordinances, are *ultra vires* and in excess of the power of the city, and for such acts of such officers whereby damage occurs to any citizen there is no remedy against the corporation. Therefore it follows that the charges in the declaration that the city of Pontiac committed the offense therein charged,

could not be legally true, as the city is an incorporated body and can not act without agents, and it can have no agents who can commit illegal acts for which it is responsible.

The point is made by counsel for appellant that inasmuch as the demurrer was joint, if one count of the declaration was good against either party then the demurrer should have been overruled, because, he claims, the second count was good at least against Robinson. We think this point is not well taken, for the law seems to be settled that there are some torts in legal consideration that may be committed by several parties for which joint action may be supported against all the parties. "But if in legal consideration the act complained of could not have been committed by several persons and can only be considered the tort of the actual aggressor or the distinct tort of each, a separate action against the actual misdoers only, or against each, must be brought." "Therefore they may demur which should be sustained where the action is brought against both." Vol. 1, Chitty's Pleadings, 14th American Ed., Secs. 85 and 86.

An action against a husband and wife for joint torts can not be maintained. McKeowen v. Johnson, 1 McCord (S. C.), 578. A corporate bank can not be sued jointly with a natural person for an assault and battery because the bank can not commit an assault and battery. Orr v. The Bank of the United States, 1 Ohio 25; See Yeazel v. Alexander, 58 Ill. 261; Davis v. Johnson, 41 Ill. App. 23.

The judgment of the court below is therefore affirmed.