The plaintiff tendered the following issues: *Page 240 
1. "Was the death of the plaintiff's intestate caused or accelerated by the unwholesome condition of the prison of the city of Statesville, occasioned by the negligence of the said city to provide a prison suitable for the health and comfort of the prisoners?"
2. "What damage, if any, has the plaintiff sustained thereby?"
In lieu of these issues the court submitted the following issues:
1. "Was the death of the plaintiff's intestate due to the negligence of defendant, as alleged in the complaint?"
2. "What damage, if any, has the plaintiff sustained thereby?"
Plaintiff excepted, because the court failed to submit her first issue in terms as above set forth, and the plaintiff excepted to the first issue submitted by the court, as above set out.
The defendant prayed for the instructions following, which were given, with modifications, and as modified are as follows:
1. "The defendant is not answerable in damages for arrests made by policemen for violations of the ordinances of the town and for the lawful commitment to prison, made under such arrests; and if you find, therefore, that J. P. Coley, the intestate of the plaintiff, was upon the streets or in a public place in the town on the evening of 12 June in an intoxicated condition or in such condition that to all appearances he seemed to be intoxicated, and the town police, having their attention (304) called to his condition, thereupon took the deceased into custody and carried him to the calaboose to detain him until sober enough to be taken before the mayor and discharged according to law, and the said Coley was allowed to remain in the calaboose for this purpose, and while thus confined died in the calaboose, the defendant in this case is not liable in damages to the plaintiff, except and unless his death was caused by the condition and defective construction of the calaboose itself.
2. "When the defendant town, through its policemen, causes the arrest of persons engaged in violating its ordinances, the town is discharging a governmental function, a duty and power conferred on it by its charter, and in this respect acts in the same way that the State acts through and by its sheriff when he makes arrests for violation of the State laws; and in the discharge of these duties and obligations by the town it does not incur any liability for damages for the negligence or mistake of its policemen.
3. "If the jury find that J. P. Coley was drunk, openly and publicly, in the town, on 12 June, or to all appearances was publicly in a drunken condition, it was the duty of the policemen to arrest him, remove him from public view, and confine him in the city prison until sober, and then carry him before the mayor to answer the charge, and it was not necessary for the policeman to have secured a warrant before he made *Page 241 
the arrest and took said Coley into custody; and for making the arrest under such circumstances the defendant is not answerable in damages, and the defendant would not be liable to the plaintiff in damages in this case on account of the arrest, even if the policemen had gone to the extent of using violence in making the arrest, or had been careless and negligent in making the arrest and putting the said Coley in prison.
4. "In order for the plaintiff to maintain her action in this case, it is necessary for her to show to the jury by a greater weight of the evidence that the proximate cause of the death of her husband was the fault of the town in failing and neglecting to properly construct and (305) provide for the town a suitable and necessary calaboose, stationhouse, or prison, and that, owing to such failure on the part of the town, the confinement of her husband in the said town prison was the direct and proximate cause of his death; in other words, that the death of the said Coley would not have happened at the time it did but for the fact that he was put in the town prison, which, from its condition and defective construction by the town, its want of ventilation, produced the death of plaintiff's intestate. If you find the condition of the prison did not cause or accelerate the death of Mr. Coley, you will answer the first issue `No.'
5. "But if you find that the defendant town had built a reasonably comfortable police prison for the purposes for which said prison is intended, and supplied and furnished to those who had immediate charge of it those things that were reasonably essential to prevent bodily suffering on the part of prisoners while confined therein from excessive cold or heat, or hunger, and to reasonably protect their health; and you further find that plaintiff's husband was confined therein by the police of the town, for the reason that they honestly thought that he was drunk, the plaintiff's action in this case will not lie, and she cannot recover, and you will respond to the first issue `No.'
6. "If the aldermen of the town had provided a police prison as above described — that is, one whose structure and superintendence was such as to secure the health and comfort of the prisoners, and you find that J. P. Coley had been placed in the said prison by the policemen of the town, and that the police had failed, forgotten, or neglected to make use of the means and appliances furnished in the said prison for the reasonable comfort of the said Coley while confined therein, as, for instance, if they had failed to open all the doors and all the windows in such way as to give good ventilation, in such case the town would not be (306) liable in damages to the plaintiff for this forgetfulness or carelessness of its policemen, unless this carelessness had been made known to the authorities of the town, and they had had notice to prevent the same; *Page 242 
and if you find the facts as above stated, the response to the first issue will be `No.'
"The doctrine is, that while the town must provide a suitable police station in which to confine prisoners, and exercise reasonable prudence in selecting suitable men to look after the prison and prisoners confined in it, neither the board of aldermen nor the town is responsible further than this; and the default, if there were any, in the policemen of the town would not make the town liable for the default of the said policemen.
7. "If the jury find from the evidence that the said Coley had some disease of the heart and indulged on the evening of the 12th too freely in the use of spirituous liquors, and thereby caused his own death, and that such disease and use of spirituous liquor was the proximate cause of his death, the plaintiff cannot recover, and the jury will respond to the first issue `No.'
8. "If the jury believe from the evidence that J. P. Coley was diseased in his kidneys and had some heart trouble, and that on the evening of the 12th he became intoxicated, and thereby brought on syncope, or coma, as testified to by the physicians, and that this excessive drinking was the proximate cause of his death, the jury will answer the first issue `No.'
9. "If the jury find that the death of the said Coley was caused by some fatal malady or disease, and that he would have died in one place as well as another, and that he did die from said disease as the proximate cause of death, the jury will answer all the issues in favor (307) of the defendant; and if the jury find that his death was caused by a disease and by his own acts, to-wit, excessive drinking, combined, and that such disease and excessive drinking was the proximate cause of his death, they will answer all the issues in favor of the defendant.
10. "If you find the facts to be, from the evidence, that the police of the defendant town arrested Mr. Coley in an apparently intoxicated condition on 12 June, and placed him in the police prison between 6 and 7 o'clock in the evening, and that the police prison in which he was placed was a room 7 feet wide, 9 feet long and 8 feet high, and that the door of the said prison room was a lattice door, with 240 openings in it and 32 inches wide and 78 inches high, and that the said lattice door communicated with a hallway which was 6 feet wide, 9 feet long and 8 feet high, and that at the east end of this hallway there was another lattice door 3 feet wide and 6 feet high, communicating with the outside air, and that there was another door at the west end of the said hall, which was left standing open, 32 inches wide and 6 feet high, opening into the mayor's office, adjacent, 20 feet by 24 feet in size; and should further *Page 243 
find that there was a window at the north and south sides of this mayor's office, left open at the time the prisoner was placed in the said cell, which communicate with the outside air, and that about the hour of 10 o'clock of that same evening said Coley was found dead in the said prison; and if these are all the facts, and the only facts, the jury find as to the construction and superintendence of the said prison, then these are not facts, if so found, which will fix the defendant with liability, and in this state of the case you are instructed to answer the first issue `No.'
12. "On the question of damages, submitted in the second issue, if you find the first issue `Yes,' then you are instructed, in that event only, that the measure of damages in this case is the present value of the net income of the deceased, which you would ascertain by deducting (308) the cost of living and expenditures of the deceased from his gross income; and the jury cannot allow more than the present value of accumulation arising from such net income, based upon the expectancy of life. In considering this question of what a man's life is worth, his habits, whether a sober or drinking man; his health, whether diseased and likely to die soon, or sound and in robust health, are matters which it is the duty of the jury to consider.
13. "You are instructed that there is no evidence offered by plaintiff in this case as to the life expectancy of plaintiff's intestate, except the age of the deceased and the condition of his health; but the jury have a right to consider the expectation of life as stated in the mortuary table in the Code, if the plaintiff has shown the age of her intestate at the time of his death. The plaintiff contends that her intestate's age was 41 years, and the court instructs the jury that the table in the Code states that the expectation of a man 41 years old is 27.5 years.
14. "The burden is upon the plaintiff in this case to sustain both of the issues by a preponderance of the proof, and if she fails to do so, or if the evidence is evenly balanced in your minds as to whether the defendant was guilty of any negligence or not, she cannot recover, and you will answer the issues for the defendant."
To the above special instructions, given at the request of the defendant, the plaintiff excepted.
The plaintiff asked the court for special instructions Nos. 1, 2, 3, and 4, and the court gave Nos. 1, 2, and 3, with modifications, which were embraced in the instructions, Nos. 1, 2, and 3 following, but declined the fourth instruction, which is also set forth below:
"1. If the jury find that the cell in which the plaintiff's intestate was confined was defective in its construction, so that the prisoner's health or comfort, for want of such ventilation as would secure to (309) the prisoner pure atmosphere or protect him from noxious air and oppressive heat, and the plaintiff's intestate's death was accelerated *Page 244 
thereby, the plaintiff is entitled to have the jury answer the first issue `Yes,' whether the authorities of the city had notice of its defective construction or not. They are bound in law to have that knowledge.
2. "That if the jury shall find that privies were located within 12, 16, and 18 feet of the cell where the intestate was confined, for the period of ten years, then the defendant had notice of their existence; and if the jury find further that the atmosphere in the cell was rendered unwholesome, so that the prisoner was forced to inhale the noxious substances in said atmosphere eminating from said privies, and that this accelerated his death, then the plaintiff is entitled to have the jury answer the first issue `Yes.'
3. "The Constitution and laws of North Carolina provide that persons confined in any public prison shall have a clean place, comfortable bedding, as the season or other circumstances may require; wholesome food, drink, and necessary attendance. If the jury find from the evidence in this case that there was no water-closet, no buckets or other means provided into which excrement from the prisoners could have been placed, and the prisoner thereby protected from inhaling the noxious substances emanating therefrom; and further find that this state of things had existed for a considerable length of time, for many months, when it ought to have been discovered in the exercise of ordinary care, the town authorities would be presumed to have had notice; and if the jury further find that the intestate was laid on the floor, as described by the defendant's witnesses, and permitted to remain there for the (310) period of three hours, or more, without any attendance whatever, that this was not a performance of the duties required by law; and if the intestate's death was caused or accelerated thereby, then the plaintiff is entitled to have the jury answer the first issue `Yes.'
4. "The intestate having been placed in said cell by one of the policemen of the defendant, assisted by its chief of police, the defendant thereby had notice of the condition of said cell, as notice to the chief of police was notice to the defendant, upon the principle that notice to the agent is notice to the principal."
This fourth instruction the court declined to give, and the plaintiff excepted.
The court also gave the following general instructions to the jury, which, together with the special instructions above set out, were all the instructions given to the jury:
"The first issue submitted to the jury is, `Was the death of plaintiff's intestate caused by the negligence of the defendant, as alleged in the complaint?' The plaintiff contends that it was. She contends that it was the duty of the authorities of the defendant city to see that the structure and superintendence of the city prison secured the health and *Page 245 
comfort of the prisoners, and that in this case they did not do that. She contends that the prison in which her intestate was confined was a very small cell, 6 feet 9 inches wide by 9 feet long and 7 feet high; that there was no window or opening to the same, except the door, which was closed by an iron lattice door with apertures about 2 inches square; that this door opened into a narrow passway leading from the rear door of the mayor's office to the back door, about 7 feet from the door of the cell, and that there was no opening into this passway, except the door into the mayor's office and the back door of the house; that the cell was not properly cleansed; that it was filthy, and that on account of the improper structure and superintendence of the said prison and the filthy condition of the same, and the want of proper ventilation, the air (311) therein was noxious and unwholesome, and caused or accelerated
the death of the plaintiff's intestate, and that the defendant city was negligent, and that the jury should so find.
"The defendant, on the other hand, contends that the structure and superintendence of its prison was of such a nature as to secure the health and comfort of its prisoners; that it was properly cleansed; that there was an abundance of fresh air and ventilation; and it further contends that the death of the plaintiff's intestate was neither caused nor accelerated by any noxious air or unwholesome condition of the prison of the defendant city, but it contends that the intestate's death was solely due to the physical condition which he was in; that one of his kidneys was diseased, there was some trouble about his heart, and that he was suffering from urea in his blood, and that he was under the influence of alcoholic stimulants; that coma or depression resulted, and heart failure and death, and that the structure and the condition of the prison had nothing to do with it.
"The jury are instructed that the burden is upon the plaintiff to prove by a greater weight of evidence that the death of her intestate was caused by the negligence of the defendant.
"Before the plaintiff can recover, the plaintiff must show that the proximate cause of her intestate's death was the negligence of the defendant. This first requisite of a proximate cause is the doing or omitting to do an act which a man of ordinary prudence could foresee might naturally or probably produce the injury complained of, and the second requisite is that such act or omission did actually cause the injury.
"If the jury answer the first issue `No,' they need not answer the second issue; this would put an end to the case. If they answer the first issue `Yes,' then they will proceed to answer the second (312) issue, as to the amount of damages.
"It was the duty of the defendant city to see that the structure and superintendence of its prison secured the health and comfort of the *Page 246 
prisoners — that is, to see that the structure and superintendence of its prison was such as to secure the health and comfort of its prisoners.
"Cities or towns, in the exercise of the judicial, discretionary, or legislative authority conferred by their charters, or in discharging a duty imposed solely for the benefit of the public, incur no liability for the negligence of their officers, unless some statute subjects the corporation to pecuniary responsibility for such negligence. They are not responsible for unlawful arrests by police officers; but if they provide a place of imprisonment which is so badly constructed that a prisoner cannot be reasonably comfortable therein, they are bound to have knowledge of such improper construction, and if injury results therefrom, they are responsible.
"By the word `superintendence' the law imposes upon governing officials or municipal corporations the duty of exercising ordinary care in procuring articles essential to the health and comfort of the prisoners and of overlooking their subordinates in immediate control of the prisoners, so far at least as to replenish the supply of necessary articles when notified that they are needed, and of employing such agents and appropriating such money as may be necessary to keep the prison in such condition as to secure the comfort and health of the inmates.
"If the jury in this case find from the evidence that the prison cell in which the plaintiff's intestate was confined when he died was 7 feet wide, 9 feet long, 8 feet high; that it had no opening into it through which air could pass, except an iron lattice door in which the apertures were 2 1/2 inches square, opening into a passageway 6 feet wide, 9 feet long (313) and 8 feet high, leading from a door in the mayor's office, in which there were two windows to a door opening on a back lot, and that about or near said lot there were two or three privies which had been there for ten years, and that the said privies were 12, 16, and 18 feet from the said prison cell; and if the jury further find that, on account of such construction of said prison, there was insufficient ventilation and noxious and unwholesome air within said prison, and that such unwholesome or noxious condition of said prison caused or accelerated the death of the plaintiff's intestate, the jury will answer the first issue `Yes'; and the jury, in considering the structure of the prison, have a right to take into consideration the location of said prison. If the structure and superintendence of the prison in question was such that the air therein was not unwholesome and noxious and was such as to secure to the plaintiff's intestate confined therein a reasonable degree of comfort and such as to protect him from such actual bodily suffering as would injure his health, then the defendant had performed its duty as to the structure and superintendence of the prison, and the jury will answer the first issue `No.' *Page 247 
"If the plaintiff has failed to show that the structure and superintendence of the said prison was such as not to secure the health and comfort of the plaintiff's intestate confined therein, the jury will answer the first issue `No.'
"If the death of the plaintiff's intestate was not caused or accelerated by the defendant's failure of duty as to the structure and superintendence of the said prison, but was caused by the said intestate's physical condition, then the jury will answer the first issue `No.'
"If the jury come to answer the second issue, as to damages, the rule by which this estimate is to be made is `the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased.' As a basis on which to enable the jury to make their (314) calculation or estimate, it is competent for them to consider, as shown from the evidence the age of the deceased and his prospect of life, his habits and character, his industry and skill, the means he had to facilitate the making of money, the business he was employed in, and in this way to fix upon the net income which might be reasonably expected if death had not ensued, and thus get at the pecuniary worth of the intestate to his family.
"And the jury will ascertain the present value, based upon the expectancy of life, of the accumulation arising from the net income ascertained by deducting the cost of living and the expenditures from the gross income, and give this sum as their answer to the second issue.
"The plaintiff contends that her intestate was 41 years old when he died, and according to the mortuary table the expectancy of a man 41 years old is 27.5 years; but the defendant contends that the condition of the plaintiff's intestate was such that he could not have lived; that under the most favorable circumstances he could not have lived long. The jury will determine from the evidence, if they come to answer the second issue, what in their judgment was the expectancy of life of the plaintiff's intestate.
"If the jury find that the plaintiff is not entitled to recover any damages, they will answer the second issue `Nothing.'"
The jury answered the first issue in favor of the defendant.
The plaintiff moved for a new trial, upon the following grounds:
1. "For that the court erred in not submitting plaintiff's first issue, tendered as above set forth, and in submitting in lieu thereof the first issue as above set forth.
2. "For that the court erred in charging the jury as requested by the defendant, as set out above.
3. "For that the court erred in failing to give instruction No. 4 (315) asked for by the plaintiff.
4. "For that the court erred in its charge, as set forth above, in what *Page 248 
it said concerning the proximate cause of intestate's death, and in its definition of what is a proximate cause.
"For that the court erred, in that, after charging the jury as requested by the plaintiff, and in its general charge (all the instructions given the jury are set out above in the case on appeal), that if the jury should find that the structure or condition of the prison caused or accelerated the death of deceased, that defendant would be liable, and that they should answer the first issue submitted to them `Yes,' then, as plaintiff alleges, proceeded further to charge the jury, as requested by the defendant in paragraphs 1, 4, 8, and 9 of its prayers for instructions, that before the plaintiff can recover in this action they must find that the death of the deceased was caused by the defective construction of said prison and its unwholesome condition, which charge, as plaintiff contends, was inconsistent with the charge already given, in that it failed to present to the jury the question whether the construction and condition of said prison accelerated the death of the deceased."
Motion for new trial was overruled, and plaintiff excepted and appealed from the judgment rendered for defendant.
The issues submitted were such as enabled the parties to present every phase of the contention, and when such is the case no objection thereto can be sustained, either for issues submitted or for refusing to submit other or different issues. Rittenhouse v. R. R.,120 N.C. 544; Ricks v. Stancill, 119 N.C. 99; Bradsher v. Hightower, 118 N.C. 399.
(316) Thirteen special instructions, duly numbered (out of sixteen asked), were given at the request of the appellee. The appellant excepted "to the above special instructions, given at the request of the defendant." We cannot agree with the appellee that this exception is invalid as a "broadside" exception. The identical point is passed upon inWitsell v. R. R., 120 N.C. 557. The requests to charge being "separately stated and numbered" (Code, sec. 550), an exception for giving them is equally specific and not "broadside," since it gives the judge and the appellee specific information of each instruction excepted to, what evidence should be sent up to throw light thereon, and what propositions of law the appellee should be prepared to discuss on appeal. As that opinion states, "This is specific information, which would not be fuller if a separate exception was made seriatim to each instruction given."
But upon scrutinizing the thirteen instructions excepted to, we find no error therein. As to the first instruction, the charter and ordinances authorized the police to arrest the plaintiff's intestate and to hold him *Page 249 
till fit for trial or sober enough to give bail. If the city appointed suitable police, it incurred no liability for their action in making the arrest under the circumstances in this case. Moffitt v. Asheville,103 N.C. 277, which follows, and cites Hill v. Charlotte, 72 N.C. 55; S.v. Hall, 97 N.C. 474; 2 Dillon Mun. Corp., secs. 965 and 975. The defendant is liable only for failure to properly construct the prison or to so furnish it as to afford reasonable comfort and protection from suffering and injuries to health. Moffitt's case, supra; Shearman Red. Neg., sec. 139, and note 2. The town is required to exercise ordinary care in procuring necessaries for prisoners and supervising its subordinates.Threadgill v. Comrs., 99 N.C. 352. The same authorities sustain the second, third, fifth, and sixth prayers for instruction given for defendant, as do also Shields v. Durham, 116 N.C. 394, 407; s. c., 118 N.C. (317) 450. The fourth, seventh, eighth, ninth, tenth, and fourteenth prayers of defendant were also properly given. The twelfth instruction lays down the rule of damages in accordance with that in Pickett v.R. R., 117 N.C. 616; and the thirteenth was based upon the mortuary tables (Code, sec. 1352), which, being a public act, was competent without being put in evidence.
The appellant further excepts to the refusal to give the appellant's fourth prayer. So far as it was correct, it was given in the appellant's first prayer and in the general charge also, and in so far as it asks the court to instruct that notice to the chief of police was notice to the city it was counter to Shields v. Durham, supra, in which case it was held that the town was fixed with notice, not because of the knowledge of the chief of police, but because he had told some of the governing body and because of the long time the prison had remained in a bad condition, and the failure of the commissioners to have the same inspected by a committee of their body.
The court's definition of proximate cause is supported by ample authority. Milwaukee v. Kellogg, 94 U.S. 469, 475; S. Red. Neg., sec. 739; Campbell v. Stillwater, 50 Am. Rep., and cases cited. The plaintiff's fifth and last exception cannot be sustained. There was no inconsistency. We concur with the counsel for appellee that his Honor's charge was "fair, full and impartial, presenting every just contention of the appellant."
No error.
Cited: Willis v. R. R., 122 N.C. 907; Pretzfelder v. Ins. Co.,123 N.C. 165; Gray v. Little, 126 N.C. 388; McIlhenny v. Wilmington,127 N.C. 149, 152; Ratliff v. Ratliff, 131 N.C. 426; Brewster v. ElizabethCity, 137 N.C. 395; Poe v. R. R., 141 N.C. 528; Hull v. Roxboro,142 N.C. 460; Metz v. Asheville, 150 N.C. 749; Carrington v.Greenville, 159 N.C. 635; Nichols v. Fountain, 165 N.C. 168. *Page 250 
(318)