McILHENNEY v. CITY OF WILMINGTON.

(November 13, 1900.)

1. *Municipal Corporations—Liability for Torts—Officers.*

> A municipal corporation is not liable for the torts of its officers unless made so by statute.

2. *Municipal Corporations—Liability for Damages.*

> Where a municipal corporation acts in its corporate capacity or in the exercise of powers for its own advantage, it is liable for damages caused by the torts of its officers or agents.

3. *Municipal Corporations—State Officers—Policeman—Officers.*

> A policeman is a State officer and not an officer of the city.

CIVIL ACTION by E. D. McIlhenney against the city of Wilmington, heard upon complaint and demurrer, by Judge *Geo. H. Brown, Jr.,* at Spring Term, 1900, of NEW HANOVER Superior Court.

The plaintiff filed the following complaint:

"The plaintiff alleges and complains: (1) That the defendant, the city of Wilmington, is a municipal corporation, duly created and existing under and by virtue of the laws of the State of North Carolina. (2) That under the act of the General Assembly of North Carolina, which was ratified on the 5th day of March, 1897, it was provided, under sec. 2 of said act, among other things amending the charter of the

city of Wilmington, that there should be elected by the qualified voters of each ward one alderman only, and that there should be appointed by the Governor one alderman from each ward, and that the board thus constituted should elect a mayor, according to the laws declared by said act. (3) That immediately after the election was held, in compliance with said act, the Governor appointed as aldermen from their respective wards, the following persons, to-wit: S. P. Wright from the First Ward (and others named in the complaint), who met with Walker and Green, who were elected under the said act, and elected S. P. Wright mayor, and thereupon H. C. Twining was elected to fill the vacancy caused by the selection of Wright as mayor. (4) That by virtue of authority of law the aldermen were authorized to appoint policemen for the city. (5) That the board, by virtue of said power, appointed a certain number of policemen who were absolutely incompetent, and without necessary judgment to execute their duties as prescribed by law. (6) That said Wright, who was chief executive of the city, personally knew the qualifications of every policeman. (7) That said Wright, as well as the members of the board, were well acquainted with one Thomas Temple, who was appointed policeman by the mayor and the board, and were frequently notified of his incompetency, and continued to keep him upon the police force. (8) That Temple was frequently reprimanded by the mayor for his carelessness and incompetence, the said Temple continuously making arrests without authority of law, and when no offense had been committed. (9) That Temple was notorious for his cruelty and want of judgment in making arrests, and on numerous occasions without authority, either of fact or of law, he made arrests which were unlawful, and for which he was publicly reprimanded by the mayor, Wright. (10) That on the 1st of September, 1898,

the plaintiff in this action was quietly sitting on the steps of the National Bank of Wilmington, and was not violating the laws of the State or of the municipality; that he had simply sat down on the steps, waiting for a friend, whom he frequently met at that corner, and took to his room for a quiet and friendly conversation; that Temple saw the plaintiff sitting on said step, and went over to where the plaintiff was, and in a brutal and outrageous manner accosted the plaintiff, and told him he had a great mind to run him (the plaintiff) in; that the plaintiff pleaded with Temple, and told him that he was simply sitting there waiting for a friend, whereupon Temple seized hold of plaintiff, jerked him from his position, shook him, and told him that he was going to take him to the guard-house, and proceeded to carry him to the city prison. When Temple arrived in front of the city hall, without any warning or authority, or without any resistance on the part of plaintiff, he drew his club, and dealt plaintiff a most outrageous blow, splitting his scalp about two inches, and completely covering his head, face and body with blood, which flowed from the wound produced by the blow. (11) That on September 2, 1898, plaintiff was brought before the mayor, Wright, and tried, and was discharged by the court upon the ground that he had committed no offense, and Temple, who made the arrest, was publicly reprimanded by the mayor. (12) That, notwithstanding Temple was publicly reprimanded by the mayor for the unlawful arrest of plaintiff, the said Temple was kept in the employ of said city as a police officer. (13) That plaintiff was unlawfully imprisoned by said city, to his great damage to the amount of $5,000. (14) That plaintiff was tortured, injured, humiliated, beaten, outraged, and imprisoned in the city prison by said Temple, to his great damage to the amount of $5,000. Wherefore plaintiff demands judgment, etc.

From a judgment sustaining the demurrer, plaintiff appealed.

*Herbert McClammy,* for plaintiff.
*Iredell Meares,* for defendant.

Clark, J. The defendant demurred to the complaint that it did not state facts sufficient to constitute a cause of action. The complaint alleged that the plaintiff, while quietly sitting on the steps of the bank, and not in any manner violating the laws of the State or city, was arrested in a brutal manner by one Temple, a policeman of defendant city; that the plaintiff, when brought before the mayor the following day, was discharged, after trial, on the ground that he had committed no offense, and the policeman was reprimanded by the mayor; that the policeman (Temple) was notorious for his cruelty and want of judgment in making arrests, having on previous occasions made arrests without justification and been reprimanded therefor, and that the mayor and aldermen who appointed him on the police force were acquainted with his character.

The court below properly sustained the demurrer. The law is too well settled to admit of debate. It may, on a review of the authorities, which are uniform, be thus stated: When cities are acting in their corporate character, or in the exercise of powers for their own advantage, they are liable for damages caused by the negligence or torts of their officers or agents; but where they are exercising the judicial, discretionary, or legislative authority conferred by their charters, or are discharging a duty imposed solely for the public benefit, they are not liable for the torts or negligence of their officers, unless there is some statute which subjects them to liability therefor. *Moffit v. City of Asheville,* 103 N. C., 237; *Prichard v. Board,* 126 N. C., 908; *Hill v. Board,* 72

N. C., 55; *Coley v. City of Statesville,* 121 N. C., 316. In the present case the policeman was, as it were, a sheriff, or State officer, and the liability for any assault or tort committed by him was personal, as in the case of a sheriff. The non-liability of municipalities in such cases is based upon the ground that they are subdivisions of the State, created in part for convenience in enabling the State to enforce its laws in each locality with promptness, and simultaneously, when occasion requires it, in the different subdivisions within its boundaries; and that while enforcing those laws which pertain to the general welfare of the State, and to the people generally in all its subdivisions, the State acts through these subdivisions, and uses them and their officers as its agent for the purposes for which a State government is instituted and granted sovereign power for State purposes; and, further, that the State has not made them the insurers of public or private interests, or liable for any careless or willful acts of its officers. "Police officers can in no sense be regarded as agents or servants of the city. Their duties are of a public nature, and their appointment is devolved on cities and towns by the Legislature as a convenient mode of exercising the functions of government; but this does not render the city liable for their unlawful or negligent acts." *Buttrick v. City of Lowell,* 79 Am. Dec., 721. "If such officers are elected or appointed by the corporation, in obedience to a statute, to perform a public service, not local or corporate, but because this mode of selection has been deemed expedient by the Legislature in the distribution of powers, they are not to be regarded as the agent of the corporation, but as public or State officers, with such powers and duties as the statute confers upon them, and the doctrine of *respondent superior* does not apply." *Woodhull v. City of New York,* 150 N. Y., 450. "With regard to the liability of a public municipal

corporation for the acts of its officers, the distinction is between the exercise of its legislative powers which it holds for public purposes and as part of the government of the country and those private franchises which belong to it as a creation of the law. Within the sphere of the former, it enjoys the exemption of the government from responsibilities for its own acts and for the acts of those who are independent corporate officers deriving their rights and duties from the sovereign power." *Commissioners v. Duckett,* 20 Md., 476.

A case exactly "on all fours" is *Craig v. City of Charleston,* 180 Ill., 154, which says: "It is a familiar rule of law, supported by a long line of well-considered cases, that a city, in the performance of its police regulations, can not commit a wrong through its officers in such a way as to render it liable for tort. It is contended, however, that the appellant does not base his right of recovery against the city upon the wrongful act of Apgar (a policeman) merely, but upon the wrongful act of the mayor in appointing such a man as Apgar, when he knew, or should have known, of his dangerous and vicious character. The same principle which absolves the city from liability for Apgar's tortious act applies to the act of the mayor. The mayor was simply exercising a discretoin vested in him by virtue of his office and the laws of the State. If the appointment was a wrongful act, which resulted in injury to the appellant, the burdens of liability can not be cast upon the inhabitants and taxpayers of the city. A municipal corporation, while simply exercising its police powers, is not liable for the acts of its officers in the violation of the laws of the State or in the excess of the legal powers of the city. 2 Dill. Mun. Corp. 950, 968; *Town of Odell v. Schroeder,* 58 Ill., 353; *City of Chicago v. Turner,* 80 Ill., 419; *Wilcox v. City of Chicago,* 107 Ill., 334; *Blake v. City of Pontiac,* 49 Ill. App., 543."

Upon reason and authority, the defendant city is exempt from the liability here sought to be imposed upon it equally whether it is for a tort or negligence, and whether the recovery is sought by reason of the misconduct of the officer in making the arrest, or in the act of the mayor and aldermen in appointing or retaining an unsuitable officer, with knowledge of his unfitness. In either aspect, the conduct of the officer is in the discharge of official and governmental duty, and the taxpayers of the city are not answerable in damages for official misconduct in the discharge of governmental functions in the absence of a statute making them so. It is true it is recited in *Coley v. City of Statesville,* 121 N. C., 316, that the municipality in that case had appointed suitable police; but that was only a circumstance to the credit of the defendant, and not a ruling, that if it were otherwise the town would be liable, for it is immediately added: "The defendant is liable only for failure to properly construct the prison, or to so furnish it as to afford reasonable comfort and protection from sufferings and injuries to health. *Moffit v. City of Asheville,* 103 N. C., 237; Shear. and R. Neg. (5th Ed.), sec. 291." In this section of Shear. and R. Neg. and notes, the points involved in the present case are found fully settled. The reason the town is liable in the particular pointed out in *Moffilt v. City of Asheville* is, as there stated, because of a statutory provision.

The non-liability of a municipality for the torts or negligence of its officials, when acting within their governmental powers, is discussed, and held as settled, with citation of authorities. Dill. Mun. Corp. (4th Ed.), sec. 975, and cases cited; *Cook v. Mayor,* etc., 54 Ga., 468; *Bartlett v. City of Columbus* (Ga.), 44 L. R. A., 795. The above and many other authorities to the same purport are presented in the excellent brief of Mr. Meares, whose labors have been

useful to the Court in preparing this opinion. The policeman Temple, if the facts are as alleged in the complaint, is liable both civilly and criminally. Whether the same is true in regard to the mayor and aldermen, as seems to be intimated in *State v. Hall,* 97 N. C., 474, we express no opinion.

Affirmed.