MRS. MARGARET H. McDONALD v. W. H. CARPER, INDIVIDUALLY AND AS CITY MANAGER OF THE CITY OF RALEIGH, AND THE CITY OF RALEIGH, A MUNICIPAL CORPORATION.

(Filed 24 February, 1960.)

**1. Pleadings § 12—**

The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences of fact as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader.

**2. Municipal Corporations § 7—**

Nothing else appearing, it will be assumed that the powers and duties of the city manager of a municipal corporation are those conferred and defined by the General Statutes. G.S. 160-349.

**3. Municipal Corporations §§ 5, 10—**

Action of the city manager of a municipal corporation in instigating the arrest and prosecution of a municipal employee for embezzlement is done in the performance of a governmental function imposed upon the city manager by statute, and therefore the city may not be held liable in tort by such employee in an action for malicious prosecution.

PARKER, J., concurs in result.

McDONALD v. CARPER.

APPEAL by plaintiff from *Williams, J.,* May Regular Civil Term, 1959, of WAKE, docketed and argued as No. 459 at Fall Term, 1959.

Civil action to recover actual and punitive damages for alleged malicious prosecution, heard on defendant City of Raleigh's demurrer to complaint.

Plaintiff's allegations, summarized, are as follows:

Plaintiff was employed by the City of Raleigh as a bookkeeper and secretary to Mr. Howard White, supervisor of the Tax Department. On September 10, 1957, defendant Carper, individually and in his capacity as City Manager of the City of Raleigh, maliciously and falsely accused plaintiff "with embezzling approximately $10,000.00 of the Tax Funds belonging to the City of Raleigh." Plaintiff was so shocked and unnerved by said accusation, which she emphatically denied, that she left her duties in the Tax Department and went home, "verging on nervous prostration."

The following morning an attorney was employed to represent plaintiff in connection with the said malicious and false accusation. Carper refused to discuss with plaintiff's attorney the details of the charges he had made. Upon Carper's refusal to grant plaintiff a leave of absence of one week, plaintiff's attorney "then resigned her position with the Tax Department."

By publication in The News and Observer, a Raleigh newspaper, plaintiff presented "questionnaires" to Carper and the governing body of the City of Raleigh giving information tending to show that plaintiff was "NOT GUILTY" and that "other employees probably were." Carper and the Raleigh City Council "blinded themselves to the real facts" as set forth in said "questionnaires" and investigated no one for the alleged embezzlement other than plaintiff.

Several weeks later, plaintiff's counsel publicly demanded of the Raleigh City Council and of Carper, individually and as City Manager, that Carper swear out a warrant against plaintiff "charging her with the embezzlement to the end that she might have a preliminary hearing" and thereby "discover in detail the evidence, if any, that the said W. H. Carper had in connection with his accusation of embezzlement on her part." Carper refused to sign such warrant, and on October 12, 1957, plaintiff's counsel, by letter, notified the Mayor and all members of the City Council of Carper's said refusal.

Carper, "in a further effort to dodge his responsibility in connection with his malicious and false accusations against the plaintiff," sent "all of his pet underlings before three different Wake County Grand Juries" between September 11, 1957, and July 8, 1958, but said three Grand Juries refused to issue a presentment or indictment against

plaintiff. Even so, Carper "still continued to send the same horde of his pet underlings and many members of the Raleigh Police Department and S. B. I. before the Fourth Grand Jury which had been harassed by Carper and his underlings already for a period of approximately 10 months and as the plaintiff verily believes finally issued a presentment and an indictment against the plaintiff on or about July 8, 1958." Plaintiff was then arrested under said bill of indictment and released on bond.

On or about July 10, 1958, upon consideration of plaintiff's motion for a bill of particulars, the court "issued an order granting counsel for the plaintiff an adverse examination of all the witnesses sent by W. H. Carper to the Grand Jury." Upon such adverse examination, "all testified that they knew nothing which would tend to incriminate" plaintiff. Upon trial on said bill of indictment, the jury, on November 29, 1958, returned a verdict of "NOT GUILTY."

This prosecution of plaintiff was "instigated and relentlessly pursued by the said W. H. Carper, individually and in his capacity as City Manager, agent and employee of the City of Raleigh, acting within the scope of his employment and with the full knowledge and consent of the City Council, the governing body of the City of Raleigh," without probable cause, maliciously, and "with several ulterior motives," to wit: (1) "to cover up for some of his pet employees, the real culprits involved in this alleged embezzlement," and "to keep the prosecution from turning on these pets, . . . kept the evidence involving the real culprits from the various Grand Juries of Wake County and presented false and fraudulent evidence pointing the finger of suspicion against this plaintiff, . . ." (2) to frighten "the Bonding Company on the bond of Mrs. McDonald and Mr. Howard White, supervisor of the Tax Department, into paying the alleged losses allegedly embezzled, and thus collecting said alleged losses through the threat of a criminal prosecution" of plaintiff; (3) "to save his own face on account of his absolute carelessness and negligence in the matters of the Tax Department."

Plaintiff's claim, presented on February 5, 1959, was denied by the City of Raleigh on or about February 18, 1959; and on March 11, 1959, this action was instituted.

The court, being of the opinion that the complaint did not state facts sufficient to constitute a cause of action against the City of Raleigh, sustained said demurrer and dismissed plaintiff's action against the City of Raleigh.

Plaintiff excepted and appealed.

*Thomas W. Ruffin for plaintiff, appellant.*
*Paul F. Smith for defendant City of Raleigh, appellee.*

Bobbitt, J  "The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader." *McKinney v. High Point,* 237 N.C. 66, 70, 74 S.E. 2d 440; *Board of Health v. Commissioners,* 173 N.C. 250 91 S.E. 1019, and cases cited.

On this appeal, upon the facts alleged, we must determine whether the City of Raleigh is liable for the alleged tortious acts of its City Manager.

It is first noted that the alleged ulterior motives are primarily, if not wholly, Carper's personal motives. Indeed, the allegation that Carper's motive was to frighten the Bonding Company on the bonds of plaintiff and of the supervisor of the Tax Department, when read in context, implies that he thereby sought either to avoid liability for his own neglect or to protect "his pet employees" from involvement or liability for the alleged losses. The allegation is that Carper's motive in frightening the Bonding Company was to collect "said alleged losses through *the threat* of a criminal prosecution of the plaintiff." (Our italics) In an action for malicious prosecution, the court is concerned only with such ulterior motives as may have prompted the actual commencement of the criminal prosecution, not with threats that a criminal prosecution might be commenced. Be that as it may, decision on this appeal is based on a different ground as set out below.

In *Munick v. Durham,* 181 N.C. 188, 106 S.E. 665, the evidence was held sufficient for submission to the jury as to the liability of the city for an alleged assault by the superintendent of its water works on a customer then engaged in paying his bill. The basis of decision was that the city, in the operation of its water plant, was acting in a business capacity and not in the exercise of its governmental or police power. The court fully recognized the rule, quoting from *McIlhenney v. Wilmington,* 127 N.C. 146, 37 S.E. 187, that, in the absence of statute, a city is not liable for the torts of its officers and agents when they are engaged in the performance of a governmental function, a rule applied in the many cases referred to in *Rhyne v. Mount Holly,* 251 N.C. 521, 526, ...... S.E. 2d ......

It was held in *McIlhenney v. Wilmington, supra,* a leading case, that the city was not liable for an arrest made in a brutal manner

by a policeman known by city officials to be cruel in making arrests. *Clark, J.* (later C.J.), said: "The non-liability of municipalities in such cases is based upon the ground that they are subdivisions of the State, created in part for convenience in enabling the State to enforce its laws in each locality with promptness, and simultaneously, when occasion requires it, in the different subdivisions within its boundaries; and that while enforcing those laws which pertain to the general welfare of the State, and to the people generally in all its subdivisions, the State acts through these subdivisions, and uses them and their officers as its. agents for the purposes for which a State government is instituted and granted sovereign power for State purposes; and, further, that the State has not made them the insurers of public or private interests, or liable for any careless or wilful acts of its officers." Decisions in other jurisdictions are in accord: *McIntosh v. City and County of Denver (Colo.)*, 55 P. 2d 1337, 103 A.L.R. 1509; *Swanson v. City of Fort Lauderdale (Fla.)*, 21 So. 2d 217; *Combs v. City of Elizabethton (Tenn.)*, 31 S.W. 2d 691; *McCarter v. City of Florence (Ala.)*, 112 So. 335; *Calwell v. City of Boone (Iowa)*, 2 N.W. 614.

In the annotation, "Liability of municipality or other political unit for malicious prosecution," 103 A.L.R. 1512, this statement appears: "It has generally been held that a municipality is not liable for malicious prosecution of criminal actions by its officers." Examination of the decisions, including those discussed in said annotation, discloses variant factual situations. Too, there is a lack of uniformity as to the ground on which decision is based. Thus, it has been held that where the officers of a city act maliciously and without probable cause in the institution of a criminal prosecution, such acts are beyond the scope of their authority and constitute their personal and individual acts. *Doyle v. City of Sandpoint (Idaho)*, 112 P. 204, 32 L.R.A. (N.S.) 34, Ann. Cas. 1912A, 210; *Town of Eagle Point v. Hanscom (Oregon)*, 252 P. 399. In *Taulli v. Gregory (La.)*, 65 So. 2d 312, the action was to recover for alleged malicious prosecution on the ground that the Mayor and a Councilman of the City of Westwego had instituted with malice and without probable cause, a criminal prosecution against plaintiff for destroying public property. The action as to (defendant) City of Westwego was dismissed. The basis of decision is stated in these words: "It is well settled that a municipality is not liable for the tortious acts of its officers or employees, even when committed in connection with their duties, as such duties are necessarily incident to the exercise of governmental functions by the municipality." The ground of decision in *Taulli v. Gregory, supra*, seems more nearly in

accord with the law in this jurisdiction as declared in *McIlhenney v. Wilmington, supra,* and like cases.

Nothing else appearing, we must assume that the powers and duties of the City Manager of Raleigh are those conferred and defined by our General Statutes.

The method of city government known as Plan "D" (G.S. 160-338 *et seq.*) provides for a city council, which shall elect the mayor from among its own members, in which the government of the city and the general management and the control of all its affairs shall be vested; and the city council "shall exercise its powers in the manner herein and in article 21 set forth, except that the city manager shall have the authority hereinafter specified." G.S. 160-339.

G.S. 160-349 provides: "The city manager shall (1) be the administrative head of the city government; (2) see that within the city the laws of the State and the ordinances, resolutions, and regulations of the council are faithfully executed; (3) attend all meetings of the council, and recommend for adoption such measures as he shall deem expedient; (4) make reports to the council from time to time upon the affairs of the city, keep the council fully advised of the city's financial condition and its future financial needs; (5) appoint and remove all heads of departments, superintendents, and other employees of the city."

Thus, the General Assembly imposed upon the City Manager of Raleigh, the positive duty to see that, within the city, the laws of the State are faithfully executed. If, in fact, Carper had knowledge or information affording reasonable ground for the belief that plaintiff was guilty of embezzlement of tax funds of the City of Raleigh, a violation of the criminal law of the State, it was his statutory duty to take appropriate action for the arrest and prosecution of plaintiff for such crime. We are of the opinion, and so hold, that such action would be in the performance of a governmental function. Under the law as declared in *McIlhenney v. Wilmington, supra,* and similar cases, the City of Raleigh is not liable for tortious acts, if any, committed by Carper, in connection with the exercise of such governmental function. Since it appears, upon the facts alleged, that Carper's tortious acts, if any, were committed by him in the exercise of a governmental function and statutory duty under the laws of the State, it follows that plaintiff's allegation to the effect that the City of Raleigh is liable on the theory that Carper was acting as agent of the City of Raleigh, within the scope of his agency, is an erroneous legal conclusion.

While there are allegations that plaintiff's counsel by "question-

naires" and by letter notified the Mayor and members of the City Council of plaintiff's contentions, there is no allegation that the City Council or any of its members took action either to direct or to restrain Carper's actions. Upon the facts alleged, it appears that the matter was left to, and handled solely by, the City Manager in the course of his duty as "the administrative head of the city government."

The present appeal requires no discussion as to the sufficiency or significance of the allegations of the complaint in relation to defendant Carper. He is not a party to this appeal.

Since it appears, upon the facts alleged, that plaintiff has no cause of action against the City of Raleigh, the judgment of the court below is affirmed.

Affirmed.

PARKER, J., concurs in result.