WILLIAMS v. TOWN OF GREENVILLE.

(Filed March 25, 1902.)

MUNICIPAL CORPORATIONS—*Torts—Personal Injury—Injury to Property—Liability.*

Where a drain constructed by a municipal corporation through its negligence becomes choked with refuse and overflows the premises of an adjacent landowner, the corporation is liable only for damages to the property, not for bills of physicians, medicines, increase in expenses of his family, loss of time or mental anguish, the result of illness caused by the condition of the drain.

DOUGLAS, J., dissenting.

ACTION by E. C. Williams against the town of Greenville, heard by Judge *F. D. Winston* and a jury, at October Term, 1901, of the Superior Court of PITT County. From a judgment for the plaintiff, the defendant appealed.

*Skinner & Whedbee,* and *A. M. Moore,* for the plaintiff.
*Jarvis & Blow,* and *F. G. James,* for the defendant.

FURCHES, C. J.   The plaintiff is a resident and citizen of the town of Greenville, and the defendant is a municipal corporation.   The plaintiff is the owner of a house and lot in the defendant corporation, upon which he and family reside, and have done so for the last eight or ten years.

The plaintiff alleges that it was the duty of the defendant to make such drains and sewers as were necessary to secure the health and comfort of all its inhabitants, but the defendant has utterly failed and neglected to perform and discharge its duty in this respect; that plaintiff's lot is situate on land much lower than that of a large portion of said town, and that defendant, before the plaintiff became the owner of his said lot, had cut an open ditch from the higher land through an adjacent lot into the street just below his lot, and made a cul-

vert for the water to pass this street into a branch below; and the defendant had allowed this culvert to become so choked and out of repair, that in time of heavy rains it would not carry the water that came down the ditch; that defendant had allowed the open ditch to become the depository of dead fowls and dead animals until it produced a stench both disagreeable and unhealthy; that by reason of the improper construction of this ditch and the obstruction to the flow of the water at the culvert, in times of heavy rains the water would overflow his entire lot; that this overflow water would at times remain upon his lot for a day or more, and when it would recede it would leave a scum upon his lot; that by reason of the negligence of the defendant—the overflow of this water— his home was made and became unhealthy, two of his children became sick and died; that by reason of said sickness and deaths he suffered great pain and anguish of mind; that he lost much time in nursing them; that the expenses of his family were much increased, and he had large doctors' bills and drug bills to pay, to his damage ten thousand dollars.

The defendant answered, denying the material allegations of the complaint, and denying its liability to the plaintiff for any damage.

There was much evidence introduced by the plaintiff tending to sustain the allegations of fact in the complaint, and by the defendant to rebut the same.

There were many prayers for special instructions on the part of the defendant, which we will not state or consider here. The Court submitted the following issues:

1. Was the plaintiff damaged by the negligence of the town of Greenville in diverting water on his premises as alleged in the complaint? A. Yes.

2. If so, what is the amount of actual damage, outside of mental suffering, caused to him thereby? A. $333.00.

3. If so, what amount of damage did he sustain from men-

tal suffering, resulting directly from such negligence? No answer.

The entire charge of the Court is not sent up, and we take it there was no objection to that part. But from that sent up it appears that he charged the jury on the first issue as follows: "If the town ponded water from a natural watercourse by obstructing the course, then it is the same as if the water was diverted. The law draws a distinction between water within banks, a natural watercourse, and surface water. If the town diverted water, as I have indicated, cut the ditch where there was no natural drain, then it was its duty to keep the ditch clear."

And upon the second issue he charged as follows: "This is the actual amount paid out on account of the sickness and his loss of time incident thereto. If you answer the first issue Yes, you will assess, for your answer to the second issue, the amount, in your judgment, the plaintiff actually paid out by reason of such sickness, and what he lost from his work by reason of such sickness, and in this connection you will consider what he paid the doctor, if anything, what he spent for such articles as drugs, medicines, stimulants, and other things in the sickness growing out of these conditions over and above his usual cost of living." The defendant excepted.

There was no evidence that there was a natural watercourse flowing by the plaintiff's lot, or where the old ditch was cut, though it was along or near the natural flow of the surface water. And while it was shown that there were dead fowls and animals in the old ditch, there was no evidence that the defendant put them there or knew that they were there, until they were removed.

We will not set out the special prayers for instruction not given by the Court, as we put our opinion upon what we understand to be the law of liability of a *municipality* in cases like this. We say municipality because we understand the

rule of liability as to such corporations to be quite different from the liability of individuals or private corporations. In actions for damage against a municipal corporation, where the act complained of was done in pursuance of its legislative or judicial powers, or in the exercise of its authorized police powers, the doctrine of *respondeat superior* does not apply, except as to property rights. And such defendant is only liable for injuries caused by neglect to perform some *positive duty* devolved upon it by reason of the incorporation, such as keeping the public streets in repair, or damage to property, or when it receives a pecuniary benefit from it. The reason for this distinction, that it is liable for damage, seems to lie in the fact of ownership—vested rights, which no one has the right to invade, not even the government, unless it be for public purposes, and then only by paying the owner for it. This right to take property does not fall under the doctrine of police power, and the doctrine of *respondeat superior* applies.

This doctrine is sustained in the case of *Hughes v. City of Auburn,* a New York case, reported in 46 L. R. A., 636. That case refers to *Allen v. City of Boston,* 159 Mass., 324; 38 Am. St. Rep., 423, as not being in harmony with the doctrine held in *Hughes v. Auburn.* We have examined *Allen v. Boston,* and find expressions in the argument of the case that seem to be in conflict with the doctrine announced in *Hughes v. Auburn,* and the principles announced by us in this case. But we find upon examination that the cases cited in *Allen v. Boston* are not authority for the statement that the plaintiff could recover for injury to his health, as against a municipality, for the reason that they were actions against private corporations which had no governmental or police powers, and where the doctrine of *respondeat superior* applied. It seems to us that the learned Court in *Allen v. Boston* lost sight of the governmental powers of the defendant and its right to exercise police powers, and that the doctrine of *respondeat superior* did not

prevail in that case.    And we find the great weight of author-
ity (indeed, all we have been able to examine) sustains the
views we have announced in this opinion, and none to the con-
trary, unless it is *Allen v. Boston.*

For the doctrine announced in this opinion, we cite 2 Dil-
lon Municipal Corporations, Sec. 983, and the doctrine an-
nounced by this Court in *McIlhenney v. Wilmington,* 127
N. C., 146 (50 L. R. A., 470), and *Peterson v. Wilmington,*
at this term.

As to the right of the defendant to make the ditch, and its
liability for the overflow of the water, we cite Gould on
Waters (Edition of 1883), Secs. 269 and 270; and as to
police powers, Dillon on Municipal Corporations, Sec. 141.

We are, therefore, of the opinion that the defendant may be
held to answer in damages as for a trespass, for any damages
the plaintiff may have sustained to his *property* by reason of
the wrongful action of the defendant; but not for any sick-
ness that may have been caused to him or his family; nor can
he recover damage for his time, the increase in expenses of
his family, nor for doctors' bills or medicines, that may have
been caused by such sickness.    And as his Honor instructed
the jury that they should "assess" the defendant for the loss
of time, the increased expenses of the family, the doctors'
bills and medicines, which, it seems from the findings of the
jury, were the only things upon which the jury based the ver-
dict, there was error.

While the announcements in this opinion involve no new
doctrine, we consider it an important decision, as it is proba-
bly the first time this doctrine has been so distinctly an-
nounced by this Court.

We have examined the authorities cited for the plaintiff
and fail to see that they are in conflict with this opinion; they
are cases between individuals, or against private corporations,

WILLIAMS *v.* GREENVILLE.

where governmental rights and the doctrine of police power are not involved, which distinguishes them from this case.

Error.   New trial.

DOUGLAS, J., dissenting.   I must confess my inability to appreciate the distinctions drawn by the Court.   It is admitted that the plaintiff can recover for any damage done to his property, and it is difficult to imagine a much greater injury to a man's home than rendering it uninhabitable.   I can readily see that it is not practical to award damages to the entire community for injuries to health for two reasons, (1) the extreme difficulty of measuring such damages, and (2) because of the imminent danger of bankrupting the town.   The latter is apparently the basic reason in *Hughes v. City of Auburn, N.Y.,* 46 L. R. A., 636, the case relied upon by this Court, and the only case cited tending to sustain its opinion.   Even that case, decided by a divided Court, gives as one of its reasons that the plaintiff's intestate was not the owner of the property.   In *Allen v. Boston,* 159 Mass., 324, 337; 38 Am. St. Rep., 423, the Court says:   "The defendant also argues that the only damage the plaintiff can recover, if any, would be the injury to his property; and that injury to his health or business was wrongly allowed to be included in the damages.   Such damages were specially alleged, and are clearly recoverable."

In the case at bar the damages are suffered by the owner of the property, are specially alleged and found, and can be easily and definitely computed, being the actual money paid out, and the value of his time lost on account of the negligence of the defendant.   This is clearly stated in his Honor's charge.   The opinion of the Court also cites Dillon Mun. Corp., Sec. 983.   That section is not the one that applies to the case at bar.   In Section 980, which does apply, the learned author says:   "For illustration, if a city neglects its *ministerial duty to cause its sewers* to be kept free from obstruc-

tions, to the injury of a person who has an interest in the performance of that duty, it is liable, as we shall see, to an action for the damages thereby occasioned." The italics are those of the author. The cases of *McIlhenney v. Wilmington,* 127 N. C., 146 (50 L. R. A., 470), relating to the misconduct of a policeman, and *Peterson v. Wilmington,* at this term, referring to the fire department, are equally devoid of application to the case at bar. In this case the injury was apparently caused by the active negligence of the defendant's officers and agents in diverting water by means of a ditch, and then permitting this ditch to be obstructed not only with sand, but with "dead cats, chickens, pigs, and other dead animals." This seems to me gross negligence, which is clearly actionable. It is true the town authorities might be indicted either as at common law for maintaining a public nuisance, or for neglect of duty under The Code. *State v. Hawkins,* 77 N. C., 494; *State v. Hatch,* 116 N. C., 1003; *State v. Dickson,* 124 N. C., 871. But there are very few private citizens, and especially those dependent upon their daily labor, willing to undergo the trouble, expense and possible danger of antagonizing the governing body of a municipality. Moreover, such a course, while perhaps beneficial to the community, would not afford any personal compensation for the injuries received. As I see no error in the trial of the case, I must dissent from the opinion of the Court.