### HENRY A. RHYNE v. THE TOWN OF MOUNT HOLLY, A MUNICIPAL CORPORATION.

(Filed 14 January, 1960.)

**1. Appeal and Error § 1—**

An appeal follows the theory of trial in the lower court, and where there are no objections to the issues submitted, the appeal will be determined without reference to a cause of action or a defense not embraced in the issues nor presented by the parties at the trial.

**2. Municipal Corporations § 32—**

An ordinance giving the municipality authority to cut weeds, grass or other noxious growth on vacant lots does not justify the municipality, in clearing a vacant lot, to cut down oak saplings 12 to 15 feet high. Oak trees of such size are not "weeds, grass or other noxious growth."

**3. Same: Municipal Corporations § 10—**

Where a municipal corporation, in the exercise of its governmental power to abate nuisances, enters upon a lot which had been permitted by the owner to grow up in weeds but upon which were a number of oak saplings 12 to 15 feet high, and cuts not only the weeds but also the young oaks, the municipality may be held liable in damages for the difference in the market value of the lot immediately before and after the cutting on the theory of a "taking" of private property, unless the cutting of the trees was in fact necessary to remove or abate the nuisance.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Fountain, Special Judge,* April 6, 1959 Term, of GASTON.

Civil action to recover damages to plaintiff's described real property, located in the Town of Mount Holly, Gaston County.

Plaintiff alleged, stated separately, two causes of action, each based on essentially the same factual allegations but different as to the theory on which he sought to recover damages of $2,000.00 and costs.

Plaintiff's factual allegations, summarized, are these: In November, 1957, defendant, without notice to or permission of plaintiff, caused its employees and agents to go upon plaintiff's property with a bulldozer and other earth-moving equipment. Defendant's employees and agents "bulldozed or scraped away substantially all living trees, plants and plant matter theretofore growing" on plaintiff's property, "including over 100 water oak or pin oak trees," and a portion of the topsoil, and deposited same in an unsightly pile about 165 feet long, 15-21 feet wide, averaging about 6 feet in height. Prior to defendant's said conduct, the fair market value of plain-

tiff's property was $2,400.00; but, by reason thereof, its fair market value was reduced to $400.00.

On these facts, plaintiff alleged, in his first cause of action, that defendant's said conduct constituted an unlawful, intentional and tortious trespass on his property, depriving plaintiff of his property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and of Article I, Section 17, of the North Carolina Constitution; and, in his second cause of action, plaintiff alleged, in addition, that defendant's said conduct caused and created both a public and private nuisance in that defendant (1) did not remove "said unsightly pile" from his property, (2) that the cost of removal "would be tremendous and excessive," and (3) that "the unsightly pile" could not be burned because it contained "the large amount of the plaintiff's earth and soil. . ."

Defendant, a municipal corporation, answering, admitted plaintiff's ownership of the described property and that, in November, 1957, "it authorized a clean-up of all vacant lots in a radius of three blocks of the center of Town that had grown up and become unsightly . . ." Except as stated, defendant denied the essential allegations of the complaint.

For a further answer and defense, defendant alleged that it authorized said clean-up "pursuant to ordinances duly enacted and particularly that certain ordinance designated as Section No. 3 of Article III of the Code of the Town of Mount Holly," to wit:

"WEEDS: TIME FOR CUTTING. The owner, or any person in possession of any vacant lot shall cut or shrub down within four inches of the ground all weeds, grass or other noxious growth from said lot at least twice each year; the first time not later than June 15 and the second time not later than August 15 of each and every year. Each day after said dates, respectively, shall be and constitute a separate offense. Said delinquent shall, upon conviction, pay a fine of one dollar for each day any said weeds or other noxious growth are not cut down upon said lot or lots on or before the fifteenth day of June and August, as aforesaid, the Board may cause the same to be cut down and the cost of cutting may be charged against each of said lots from which the said weeds or other noxious growth are removed and against the owners thereof, and charged to them and collected as other taxes."

Defendant's further allegations, summarized, are these: Plaintiff had no valuable "timbers" growing on his lot. Plaintiff's lot is located about one and one-half blocks from the center of Mount Holly, on a main traveled street which is part of North Carolina

Highway #27, and that "plaintiff had allowed said lot to become overgrown with weeds, vines, brush, grass, kudzu, and other noxious growths to such an extent that it had become an eyesore and a menace to the general health of the people of the Town of Mount Holly." Plaintiff made no effort whatever to clean or clear his said lot. After plaintiff's lot was cleaned and beautified, defendant "always stood ready to remove said debris of vines, kudzu, brush, weeds, grass and other noxious growths," but plaintiff "refused to allow the defendant or any of its employees to go upon the plaintiff's lot and remove said debris." The removal of the "kudzu, weeds, brush, vines, grass and other noxious growths" substantially improved plaintiff's property in appearance and substantially increased its value. ". . . any action taken by the defendant in cleaning plaintiff's lot was taken in good faith and with no intention other than to improve plaintiff's property in appearance and to add to the general good appearance of the Town of Mount Holly and to protect the health of its citizens and was a valid, constitutional exercise of the police powers and other constitutional authority vested in the Town of Mount Holly."

". . . the action of the employees of the defendant Town of Mount Holly, in removing said weeds, vines, brush, grass, kudzu and other noxious growths from the property of the plaintiff, was done as the valid exercise of a governmental function of the Town of Mount Holly."

The issues submitted, and the jury's answers, were as follows:

"1. Did the defendant trespass upon the lands of the plaintiff, as alleged in the Complaint? ANSWER: Yes.    2. What amount of damages, if any, is the plaintiff entitled to recover? ANSWER: $400.00."

From judgment for plaintiff, in accordance with the verdict, defendant appealed.

*Fairley & Hamrick and Jack T. Hamilton for plaintiff, appellee.*
*Childers & Fowler for defendant, appellant.*

BOBBITT, J.    Apparently, plaintiff abandoned his alleged second cause of action. In any event, plaintiff's evidence as to damages did not relate to defendant's alleged failure *to remove* "said unsightly pile" from plaintiff's lot.

There was no exception to the issues as submitted, nor does it appear that either party tendered any other issue(s).

It is well established that an appeal follows the theory of the trial. *Pegg v. Gray,* 240 N.C. 548, 555, 82 S.E. 2d 757; Strong, North Carolina Index, Vol. 1, Appeal and Error § 1, and cases cited.

While other elements of damages are referred to in plaintiff's allegations, plaintiff's evidence as to the alleged impairment of the reasonable market value of his property relates solely to defendant's destruction of the trees thereon; and the case was submitted to the jury on this theory.

With reference to the first issue, the court instructed the jury, in substance, as follows: That the ordinance gave defendant the right to go upon plaintiff's vacant lot and cut or shrub down within four inches of the ground all weeds, grass or other noxious growth, and if defendant did no more than this, the jury's answer to the first issue would be, "No"; that oak trees the size of a person's wrist, twelve to fifteen feet high, are not weeds, grass or other noxious growth, and if the jury found, by the greater weight of the evidence, that defendant, after going upon plaintiff's vacant lot, cut such oak trees, such conduct would constitute a trespass upon plaintiff's property and the jury's answer to the first issue would be, "Yes."

Defendant does not deny its entry and acts upon plaintiff's property, nor does it assert that those who performed the work acted otherwise than in accordance with its instructions. Rather, it asserts what was actually done was justified by its (pleaded) ordinance.

The charter of the Town of Mount Holly is not in the record. Absent a special charter provision, presumably defendant relies upon G.S. 160-55, which authorizes a municipal corporation to enact ordinances "for abating or preventing nuisances of any kind, and for preserving the health of the citizens." The court, in accordance with defendant's contention, conducted the trial on the theory that the ordinance is valid; and we approve the instruction to the effect that oak trees of the size specified are not "weeds, grass or other noxious growth," within the meaning of the ordinance, and that the ordinance did not justify defendant's destruction thereof.

The verdict establishes that defendant, having lawfully entered, damaged plaintiff's property by acts in excess of the authority conferred by the provisions of the ordinance. In this connection, it is noted that defendant's evidence tended to show that the market value of plaintiff's lot was enhanced, not impaired, by its entry and acts thereon. If so, plaintiff was not entitled to recover more than nominal damages, e.g., a penny. The court so instructed the jury.

Even so, defendant contends it was engaged in the performance of a governmental function, namely, in the exercise of its police powers to protect the health of its citizens and under such circumstances is not liable for the *tortious* acts of its officials and agents, and that the court should have granted its motion for judgment of involuntary nonsuit on this ground.

It is first noted that the basis of plaintiff's recovery is *the fact* that defendant cut and destroyed the oak trees on its land. The court disregarded all other *alleged* elements of damage.

Defendant alleged that plaintiff's lot was in such condition as to constitute "a menace to the general health of the people of the Town of Mount Holly." While the greater part of defendant's evidence relates to the "unsightly" appearance of plaintiff's lot prior to defendant's entry and acts thereon, there is some evidence tending to support defendant's said allegation. Defendant contends it was engaged in the abatement of such nuisance and hence was performing a governmental function.

While not referred to in the pleadings, the judge's charge, or in the briefs, G.S. 160-234 and G.S. 160-200(6), (26), (28) confer upon municipal corporations the power to abate nuisances, "whether on public or private property," (G.S. 160-200(26)) that are detrimental to public health. G.S. 160-234 provides: "The governing body, or officer or officers (of a municipal corporation) who may be designated for this purpose by the governing body, shall have power summarily to remove, abate, or remedy, or cause to be removed, abated, or remedied, everything in the city limits, or within a mile of such limits, which is dangerous or prejudicial to the public health; and the expense of such action shall be paid by the person in default, and, if not paid, shall be a lien upon the land or premises where the trouble arose, and shall be collected as unpaid taxes."

In *Harrington v. Greenville*, 159 N.C. 632, 75 S.E. 849, *Hoke, J.* (later C. J.), states: "The general power to abate nuisances conferred on municipalities by section 2929 and other sections of the Revisal, and the power to regulate, inspect, and condemn buildings, contained in sections 2981 *et seq.* are clearly governmental in character, and for negligent default on the part of the city and its officers and agents no action lies, none having been given by the law." Section 2929 of the Revival is now codified as G.S. 160-55.

We reach this crucial question: Where defendant, acting under its power to abate a nuisance constituting a menace to health, goes upon plaintiff's lot, without plaintiff's permission or consent, for the purpose of eradicating what defendant deems to be such nuisance, and in so doing destroys trees thereon that do not in fact constitute a nuisance, is plaintiff's right to recover compensation for the impairment in value of his property caused by the destruction of the trees defeated because defendant was then engaged in the performance of a governmental function?

The legal principle on which defendant relies was stated by *Hoke, J.* (later C. J.), as follows: "It is well recognized with us that unless

a right of action is given by statute, municipal corporations may not be held civilly liable to individuals for 'neglect to perform or negligence in performing duties which are governmental in their nature,' and including generally all duties existent or imposed upon them by law solely for the public benefit." *Harrington v. Greenville, supra.*

Upon this legal principle, recovery has been denied in many cases, based upon a variety of complaints against municipal corporations, *e.g.,* temporary suspension (by ordinance) of an ordinance prohibiting firing of fireworks, *Hill v. Charlotte,* 72 N.C. 55; failure to enforce an ordinance regulating maintenance of "hog-pens and privies," causing plaintiff's illness, *Hull v. Roxboro,* 142 N.C. 453, 55 S.E. 351; failure to prohibit boys from playing baseball on public streets, *Goodwin v. Reidsville,* 160 N.C. 411, 76 S.E. 232; failure to provide an attendant at jail to protect prisoners against fire, *Nichols v. Fountain,* 165 N.C. 166, 80 S.E. 1059; *Dixon v. Wake Forest,* 224 N.C. 624, 31 S.E. 2d 853; *Gentry v. Hot Springs,* 227 N.C. 665, 44 S.E. 2d 85; negligence of jailers in locking vicious prisoner in cell with plaintiff without searching prisoner for matches, *Parks v. Princeton,* 217 N.C. 361, 8 S.E. 2d 217; neglect of jailers to maintain a warm jail during cold night, *Moffitt v. Asheville,* 103 N.C. 237, 9 S.E. 695; negligent construction and operation of an incinerator, causing injury to city employee, *Scales v. Winston-Salem,* 189 N.C. 469, 127 S.E. 543; negligently permitting children to play near a burning trash pile, *Snider v. High Point,* 168 N.C. 608, 85 S.E. 15; failure to provide adequate water under sufficient pressure to extinguish fire, *Howland v. Asheville,* 174 N.C. 749, 94 S.E. 524; negligent operation of trash collection vehicle, *James v. Charlotte,* 183 N.C. 630, 112 S.E. 423; *Broome v. Charlotte,* 208 N.C. 729, 182 S.E. 325; *Stephenson v. Raleigh,* 232 N.C. 42, 59 S.E. 2d 195; negligent operation of truck used to repair traffic signals, *Hodges v. Charlotte,* 214 N.C. 737, 200 S.E. 889; negligent operation of truck used in maintenance of street lighting system, *Beach v. Tarboro,* 225 N.C. 26, 33 S.E. 2d 64; neglect to observe sanitary precautions in discharging sewage from free public sewerage system into stream running near decedent's house, causing illness resulting in death, *Metz v. Asheville,* 150 N.C. 748, 64 S.E. 881; negligently permitting culvert to become choked and out of repair, causing illness, *Williams v. Greenville,* 130 N.C. 93, 40 S.E. 977; dumping garbage in hole near plaintiff's house, causing illness, *Hines v. Rocky Mount,* 162 N.C. 409, 78 S.E. 510; alleged negligent failure to condemn and remove buildings which were "fire traps," *Harrington v. Greenville, supra;* negligent failure to furnish suitable fire-fighting equipment, resulting in personal injury to fireman, *Peterson v. Wilmington,* 130 N.C. 76, 40 S.E. 853; arrest made in brutal

manner by policeman known by city officials to be cruel in making arrests, *McIlhenney v. Wilmington,* 127 N.C. 146, 37 S.E. 187; negligence in connection with installation, maintenance and timing of traffic signals, *Hamilton v. Hamlet,* 238 N.C. 741, 78 S.E. 2d 770; and negligence in continuing franchise to public utility furnishing gas to residents of municipality, resulting in gas explosion causing decedent's death, *Denning v. Gas Co.,* 246 N.C. 541, 98 S.E. 2d 910.

No North Carolina decision, except *Prichard v. Commissioners,* 126 N.C. 908, 36 S.E. 353, discussed below, has come to our attention, in which recovery has been denied when the municipality, by affirmative action for the purpose of abating a nuisance thereon, has damaged private property.

In *Scales v. Winston-Salem, supra,* it was held that the municipality was not liable for the construction and method of operation of its incinerator. But this Court has held that a municipality must pay just compensation if the operation of its incinerator damages private property, the basis of liability being that there has been a partial taking of private property for a public use or purpose. *Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827; *Ivester v. Winston-Salem,* 215 N.C. 1, 1 S.E. 2d 88. The test of liability is whether, notwithstanding its acts are governmental in nature and for a lawful public purpose, the municipality's acts amount to a partial taking of private property. If so, just compensation must be paid. Where, as here, the acts complained of consist of the physical destruction of trees on plaintiff's property, there can be no doubt but that a partial taking of plaintiff's property then occurred.

It is fundamental law that when private property is taken for a public use or purpose, just compensation must be paid. *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144, and cases cited. "A constitutional prohibition against taking or damaging private property for public use without just compensation is self-executing, and neither requires any law for its enforcement, nor is susceptible of impairment by legislation." *Sale v. Highway Commission,* 242 N.C. 612, 617, 89 S.E. 2d 290. ". . . the owner, in the exercise of his constitutional rights, may maintain an action to obtain just compensation therefor." *Cannon v. Wilmington,* 242 N.C. 711, 89 S.E. 2d 595; *Eller v. Board of Education, supra; Sale v. Highway Commission, supra.*

Upon this fundamental principle, where the negligence of a municipality in the operation of its sewer system caused damage to private property and injury to the health of the occupants, this Court held that the landowner was entitled to recover for the damage to his property but not for personal injuries resulting from the condition

created by defendant's negligence. *Williams v. Greenville, supra; Metz v. Asheville, supra.* In the *Williams* case, *Furches, C. J.,* states: "The reason for this distinction, that it is liable for damage, seems to lie in the fact of ownership—vested rights, which no one has the right to invade, not even the Government, unless it be for public purposes, and then only by paying the owner for it. This right to take property does not fall under the doctrine of police power, and the doctrine of *respondeat superior* applies." Also, see *Pemberton v. Greensboro,* 208 N.C. 466, 181 S.E. 258.

While not cited by defendant, we have not overlooked *Prichard v. Commissioners, supra,* in which the plaintiffs alleged, as to the Town of Morganton, that, pursuant to an order of its Board of Commissioners, plaintiffs' residence was burned and destroyed on the unfounded pretense that there was smallpox in the family or that the family had been exposed to it. The Town of Morganton demurred on these grounds: 1. The complaint failed to allege that the tortious acts complained of were, and it appears on the face thereof that they were not, within the scope of the charter powers of said corporation. 2. If the acts complained of were done under the express direction of the town commissioners, the conduct of the commissioners would be *ultra vires.* This Court, two Justices dissenting, held the complaint demurrable as to the Town of Morganton for failure to state facts sufficient to constitute a cause of action against it.

In the present case the Town of Mount Holly neither alleges nor contends that its entry and acts on plaintiff's property were *ultra vires.* It asserts only two defenses: 1. It was fully authorized by its ordinance to do what was done. 2. In any event, it was performing a governmental function.

In *Prichard v. Commissioners, supra,* this Court did not consider the question as to whether plaintiff was entitled to recover just compensation on the ground that private property had been taken or damaged by the Town of Morganton for a public use or purpose. This is also true in *Greenwood v. City of Lincoln,* 156 Neb. 142, 55 N.W. 2d 343, 34 A.L.R. 2d 1203, cited by appellant, a case relating to the destruction of raspberry bushes on plaintiff's property.

We reach this conclusion: Where a municipal corporation, in the exercise of its governmental power to abate nuisances, enters upon and damages private property by the destruction of trees, buildings, *etc.,* thereon, it is liable for the payment of just compensation unless its acts were *in fact* necessary to remove or abate a nuisance.

In McQuillan, Municipal Corporations, Vol. 6 (3rd Ed. 1949) § 24.87, the applicable rule is stated as follows: "An owner of property is not entitled to compensation for property rightfully destroy-

ed or damaged by a city in abating a nuisance; the reason for this is that the destruction or damage is for public safety or health and is not a taking of private property for public use without compensation or due process in the constitutional sense. But a municipality is liable for impairing, removing or destroying property, ostensibly in the abatement of a nuisance, where the thing or condition in question is not a nuisance *per se*, under statute or in fact, or where the thing or condition has not been declared to be a nuisance. If a party cannot get a hearing or remedy in advance of the destruction or seizure of his property he has a right to it afterwards by an action for its value. Indeed, no one, not even the municipal corporation in which an alleged nuisance is located, is protected against suit for damages for voluntarily removing that which is not a nuisance. . . .

". . . A difference in market value before and after wrongful abatement has been ruled a proper measure of damages. The burden of proving justification has been placed on the city or its contractor. But issues of fact, of course, are for the jury or a court sitting without a jury." Also, see 39 Am. Jur., Nuisances § 185; 63 C.J.S., Municipal Corporations § 771.

The foregoing statement from McQuillan is well supported by these decisions: *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 53 L. Ed. 195, 29 S. Ct. 101; *Sings v. City of Joliet* (Ill.), 86 N.E. 663; *City of Forney v. Mounger (Tex.)*, 210 S.W. 240; *City of Texarkana v. Reagan (Tex.)*, 247 S.W. 816; *Moll Co. v. Holstner (Ky.)*, 67 S.W. 2d 1; *Oglesby v. Town of Winnfield (La.)*, 27 So. 2d 137; *Mc-Mahon v. City of Telluride (Colo.)*, 244 P. 1017, 46 A.L.R. 358; *Echave v. City of Grand Junction (Colo.)*, 193 P. 2d 277; *Albert v. City of Mountain Home (Idaho)*, 337 P. 2d 377.

In *McMahon v. City of Telluride, supra*, it is stated:

"Abatement of nuisances is a governmental function. 28 Cyc. 1291. No liability can arise against a municipality for the destruction of property which is a nuisance, but it must be a nuisance in fact. 28 Cyc. 1292.

"Where the property is not in fact a nuisance, if the city is not liable in tort, because of the rule above mentioned and relied on by the city in the instant case, the municipality is nevertheless liable upon the theory that it must grant compensation for private property that it takes for public use. If certain property is in fact a nuisance, its destruction as such may not give rise to any right to compensation; but if property is destroyed under a mistaken belief that it is a nuisance, when in fact it is not a nuisance, it is taken for a 'public use' within the

meaning of the constitutional provision, and the loss to the owner should be made good. . . ."

While it may be that a complete clearance of plaintiff's lot by defendant could be made more conveniently and possibly at less expense by use of the bulldozer, there is ample evidence to support the view that the conditions on plaintiff's lot that might be considered detrimental to public health could have been corrected without destroying the trees thereon.

Our conclusion is that the court properly overruled defendant's motion for judgment of involuntary nonsuit.

Conceding that defendant, upon sufficient allegations, would have been entitled to have issues submitted as to whether plaintiff's lot was in fact in such condition as to constitute a menace to public health, and as to whether its acts were in fact necessary to remove and abate such nuisance, defendant did not present its defense on that theory. It cannot now complain because the court did not conduct the trial on issues neither tendered by defendant nor raised by its pleading.

Consideration of the evidence leaves the impression that the real fight at the trial was whether the market value of plaintiff's lot was impaired or enhanced by defendant's entry and acts thereon. The jury resolved this vital issue in favor of plaintiff.

Since defendant's contention that the court erred in overruling its motion for judgment of involuntary nonsuit involves a matter of major importance, we have deemed it appropriate to give full consideration to that question. However, we have not overlooked defendant's numerous assignments of error relating to the court's rulings on evidence and to certain portions of the court's instructions to the jury. Suffice to say, consideration thereof discloses no error deemed sufficiently prejudicial to justify a new trial.

No error.

HIGGINS, J., took no part in the consideration or decision of this case.