WILLIAM B. BYNUM v. ONSLOW COUNTY.

(Filed 12 June 1968.)

1. **Pleadings § 12—**

   In ruling upon a demurrer the court may not consider matters extrinsic to the pleading even though the parties stipulate and agree that such matters may be considered.

2. **Negligence § 20—**

   An allegation that defendant "negligently operated" a fog machine so that the wind carried DDT into plaintiff's fields and damaged his crops fails to state a cause of action based upon negligence, the facts constituting the negligence not being particularly alleged.

3. **Eminent Domain § 2; Counties § 9—**

   Where defendant county, acting in a governmental capacity, sprayed chemicals for the purpose of controlling mosquitoes, some of the chemicals drifting onto plaintiff's land and damaging his crops, there has been no taking of plaintiff's property for which plaintiff may maintain an action for compensation without the county's consent, the crop damage re-

sulting from a single tortious act and no permanent servitude having been imposed on plaintiff's property.

APPEAL by plaintiff from *Copeland, S.J.,* 23 October 1967 Civil Session of ONSLOW Superior Court.

Plaintiff's complaint alleged: The plaintiff is owner and operator of a dairy farm in Onslow County. On 8 August 1960 the defendant County through its agents and employees operated a DDT fog machine along White Oak River Road on which plaintiff's dairy is located. On that date plaintiff had corn growing in a field adjoining the road. The corn was ready to be cut for silage. The DDT fog put out by defendant's machine was carried by the wind into and over the field of plaintiff's silage corn, rendering the same unfit for dairy feed, and thereby plaintiff was damaged.

Paragraphs 6, 7, 8 and 9 of the complaint are as follows:

"6. That the DDT fog put out by the defendant's machine was carried by the wind into and over the field of silage corn, rendering the same unfit for dairy feed; and this plaintiff was forced to go into the open market and purchase feed to replace that damaged as alleged herein.

"7. That the defendant knew or should have known that the plaintiff operated a dairy on White Oak River Road or Rural Road 1331, and that, as a dairy farmer, he grew corn for silage; and the defendant knew or should have known that a field of corn sprayed with solution such as was sprayed by the fog machine would render a field of corn unfit for silage.

"8. That the plaintiff is informed, believes and upon such information and belief alleges that the defendant through its agents and employees had full knowledge of or should have known the facts alleged in the preceding, and that the defendant, through its agents and employees, negligently operated the fog machine in a manner that the wind carried the fog deep into this plaintiff's fields causing the damage hereinafter alleged.

"9. That the plaintiff is further informed, believes and so alleges that actions of the defendant, through its agents and employees, amounted to a taking of this plaintiff's property for which this plaintiff alleges he is entitled to recover."

Plaintiff seeks to recover of defendant the sum of $2,693.17 as damages.

Defendant filed answer denying the material allegations of the complaint. By amendment to its answer defendant specifically pleaded

governmental immunity from liability and that such immunity had not been waived by defendant by securing liability insurance pursuant to G.S. 153-9(44). The parties also entered into stipulations wherein it was agreed that on the date alleged in the complaint plaintiff was the owner and operator of the dairy farm; that on said date Onslow County through its employees caused DDT to be sprayed on two fields of corn which plaintiff had raised for silage; that at that time Onslow County was acting in its governmental capacity; that the corn was eventually harvested or disposed of; and "that the plaintiff is trying this case on the theory of a taking and not upon the theory of negligence."

At the hearing of the case defendant demurred *ore tenus* to plaintiff's complaint. From the judgment sustaining the demurrer and allowing plaintiff 30 days within which to amend his complaint, plaintiff appealed.

*Turner and Harrison by Fred W. Harrison, attorneys for plaintiff appellant.*

*E. W. Summersill and James R. Strickland, attorneys for defendant appellee.*

PARKER, J. The parties have entered into certain stipulations, including a stipulation that plaintiff is "trying this case on the theory of taking and not upon the theory of negligence." However, in ruling upon a demurrer to a pleading, the court may not consider matters extrinsic to the pleading, even though the parties stipulate and agree that such matters may be considered. *Lane v. Griswold,* 273 N.C. 1, 159 S.E. 2d 338. We therefore first consider the sufficiency of plaintiff's complaint to allege a cause of action based upon negligence.

The only allegation of negligence contained in the complaint is in paragraph 8, as follows:

". . . that the defendant, through its agents and employees, negligently operated the fog machine in a manner that the wind carried the fog deep into this plaintiff's fields causing the damage hereinafter alleged."

This is a bare conclusion of law. No facts are alleged setting forth in what manner the defendant's agents and employees were negligent in operation of the fog machine. "In an action or defense based upon negligence, it is not sufficient to allege the mere happening of the event through the negligence of the party and calling it negligence. The facts constituting the negligence should be alleged in par-

ticular." 1 McIntosh, N. C. Practice 2d, § 989. Quite apart from the defense of governmental immunity, the complaint fails to state any facts sufficient to constitute a cause of action based upon negligence.

Plaintiff contends that his complaint states a good cause of action on the theory that he has alleged facts which show a taking of his property by the defendant County for which he has a constitutional right to be compensated. In his brief he recognizes that the defendant County had the right to use DDT spray in an effort to control mosquitoes within its boundaries and that this is a proper governmental function. He contends that when the County in exercise of that function performs acts which damaged his property or reduced its value, there occurred an "inverse condemnation" of his property for which he had a right to seek redress in the courts. In support of this contention he cites the following language from *Charlotte v. Spratt,* 263 N.C. 656, 140 S.E. 2d 341:

> "The legal doctrine indicated by the term, 'inverse condemnation,' is well established in this jurisdiction. Where private property is *taken* for a public purpose by a municipality or other agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner, in the exercise of his constitutional rights, may maintain *an action* to obtain just compensation therefor."

Examples of "inverse condemnation" actions in which the property owner was held to be entitled to compensation for the taking of his property may be found in *Portsmouth Harbor Land and Hotel Co. v. United States,* 260 U.S. 327, 43 S. Ct. 135, 67 L. ed. 287 (erection and maintenance of a United States fort and a battery thereon and firing guns over petitioner's land); *United States v. Causby,* 328 U.S. 256, 66 S. Ct. 1062, 90 L. ed. 1206 (frequent low level flights over plaintiff's land of U. S. government planes engaged in landing at and leaving a government airport); *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440 (erection and maintenance of a City water storage tank on property nearby to plaintiff's residence); *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144 (construction and maintenance on school property of a septic tank which caused sewage to seep onto plaintiff's adjacent land); *Insurance Co. v. Blythe Brothers Co.,* 260 N.C. 69, 131 S.E. 2d 900 (discharge of numerous explosions upon rock stratum in close proximity to plaintiff's dwelling house incident to construction of a City sewerage system).

In all of these cases the acts of the sovereign in exercise of its governmental powers resulted in the imposing of some more or less permanent servitude upon plaintiffs' property sufficient for the court to find that there had been a taking of a property interest from the citizen by the sovereign. The acquisition by the sovereign of such an interest, and not the mere incidental damage to the citizen's property by the tortious acts of sovereign's agents, is required before there is a compensable taking of property. Admittedly the line between the two types of situations may not always be precise. As was said by the court in *Harris v. United States*, 205 F. 2d 765:

> "A compensable taking under the federal constitution, like the phrase 'just compensation' is not capable of precise definition. And the adjudicated cases have steered a rather uneven course between a tortious act for which the sovereign is immune except insofar as it has expressly consented to be liable, and those acts amounting to an imposition of a servitude for which the constitution implies a promise to justly compensate. Generally it is held that a single destructive act without a deliberate intent to assert or acquire a proprietary interest or dominion is tortious and within the rule of immunity."

We think that the principles expressed in the *Harris* case are controlling here. In that case, as in the case before us, plaintiff's crops were damaged by the drifting onto his lands of chemicals being sprayed by the government's agents in the exercise of proper governmental functions. The court affirmed the District Court's holding that inasmuch as there had been only one spraying operation in the area and there was no anticipated spraying of such nature in the foreseeable future, the act complained of resulted in no taking of plaintiff's property such as to require payment of compensation. The court said:

> "But we do not understand that a single isolated and unintentional act of the United States resulting in damage or destruction of personal property amounts to a taking in a constitutional sense. It is, we think, rather a tortious act for which the government is only consensually liable.
>
> "We agree with the trial court that the single act of the spraying operation fell short of a taking within the meaning of the Fifth Amendment. If the result leaves a wrong by the sovereign without a judicial remedy, the deficiency lies in the limited scope of the government's tort liability. It does not justify the extension of the contractual liability of the government beyond its intended scope."

In cases involving similar facts other courts have also denied recovery. *Columbia Basin Orchard v. United States*, 132 F. Supp. 707; *St. Francis Drainage District v. Austin*, 227 Ark. 167, 296 S.W. 2d 668; *Neff v. Imperial Irrigation District*, 142 Cal. App. 2d 755, 299 P. 2d 359; *Angelle v. State*, 212 La. 1069, 34 So. 2d 321.

The case of *Rhyne v. Mount Holly*, 251 N.C. 521, 112 S.E. 2d 40, relied on by the plaintiff, is distinguishable from the case before us and is not here controlling. In that case the damages to the plaintiff resulted from a direct physical invasion of his land by the City's agents, who brought a bulldozer thereon and scraped away substantially all plants growing thereon, including a large number of oak trees. The court, at page 527, said:

> "The test of liability is whether, notwithstanding its acts are governmental in nature and for a lawful public purpose, the municipality's acts amount to a partial taking of private property. If so, just compensation must be paid. Where, as here, the acts complained of consist of the physical destruction of trees on plaintiff's property, there can be no doubt but that a partial taking of plaintiff's property then occurred."

In the case before us there was no entry upon plaintiff's land and no taking of physical control of his property.

The judgment of the trial court is affirmed with leave to the plaintiff to amend his complaint within 30 days after the certification of this opinion if he feels so advised.

Affirmed.

CAMPBELL and BROCK, JJ., concur.